| | | |
|---|---|---|
| JACK SMITH, Chief | JAIKUMAR RAMASWAMY, Chief | DAVID B. BARLOW, U.S. Atty (# 13117) |
| Peter M. Koski, Deputy Chief | Pamela Hicks, Deputy Chief | Karin Fojtik, A.U.S.A. (# 7527) |
| Maria N. Lerner, Trial Attorney | Ann Marie Blaylock Bacon, Trial Atty | U.S. Attorney's Office, District of Utah |
| U.S. Department of Justice | U.S. Department of Justice | 185 South State Street, Suite 300 |
| Criminal Division, Public Integrity Section | Criminal Division, Asset Forfeiture and Money Laundering Section | Salt Lake City, Utah 84111-1506 |
| 1400 New York Ave. NW, 12th Floor | 1400 New York Ave. NW, 10th Floor | Telephone:	801.524.5682 |
| Washington, D.C. 20530 | Washington, D.C. 20530 | Facsimile:	801.524.6924 |
| Telephone:   202.514.1412 | Telephone:   202.514.1263 | |

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBERT G. LUSTYIK, JR.,<br>MICHAEL L. TAYLOR, and<br>JOHANNES W. THALER,<br><br>    Defendants. | Case No.  2:12-cr-645 (TC) (DBP)<br><br>**UNITED STATES' SECOND SUPPLEMENTAL NOTICE REGARDING DEFENDANTS' MOTIONS TO SUPPRESS** |

  The United States of America, through the undersigned counsel, respectfully files this supplement to respond to questions from the Court posed during the January 31, 2014, oral argument on defendants Lustyik and Thaler's motions to suppress.  During the argument, the Court had some questions for the Government concerning how documents obtained via certain search warrants at issue here were processed and searched.  In particular, the Court inquired how many documents had their designations changed from not relevant to relevant, and how many subsequent searches occurred.  *See* Jan. 31, 2014, Tr. at 49:7–49:19, 50:11–50:17.

In order to respond to the Court's questions, the Government began its analysis with the universe of documents marked relevant in Relativity[1] as of the date of the hearing (January 31, 2014).[2]  We were able to ascertain the designation history for each document currently marked relevant.[3]   In other words, for each document currently marked relevant, the Government has determined whether its designation has ever been changed from not relevant to relevant, or from "not sure" to relevant, and if so, how long after the initial designation the change occurred.  The Government has appended those results to this filing as exhibits in chart form.

Exhibit A is a summary chart showing the number of documents whose designation was changed once from not relevant to relevant, or from not sure to relevant, broken down by warrant.[4]  The "Multiple Edits" column on Exhibit A consists of documents whose designation was changed more than once, for example, from relevant to not relevant to relevant again.

For the documents whose designation changed from not relevant to relevant, Exhibit B shows the timing of those changes, again broken down by warrant, and divided into temporal

---

[1]     The returns for some warrants at issue in defendants' motions were not reviewed in Relativity and for those documents, their responsiveness was determined before loading them into Relativity.  These include the return from the Lustyik Blackberry (September 17, 2012 warrant), the return from the Lustyik text messages obtained from Verizon Wireless (December 5, 2012 warrant), and the extraction reports and manual examination performed on the Thaler iPhone (September 14, 2012 warrant).

[2]     During this process, the Government reviewed no documents currently marked not relevant, and did not change the relevancy coding for any documents.

[3]     Unfortunately, our technical specialists have informed us that they cannot determine how many keyword searches have been done, nor can they determine when such keyword search occurred.

[4]     Relativity automatically coded documents at the "family level," meaning emails and their attachments received the same coding (and coding changes).  Thus, for example, where a parent document was coded relevant, all of its attachments were also automatically coded relevant almost instantaneously.  For purposes of the attached exhibits, each document in the family is counted as an individual document.

categories. Exhibit C shows similar timing data for documents whose designation changed from "not sure" to relevant.

Exhibits D through G summarize the designation history for the documents whose designation underwent multiple edits (listed in the "Multiple Edits" column on Exhibit A). Each of Exhibits D though G pertains to a different warrant.[5]

During the review process, every email that was not filtered out by the privilege filter team was reviewed by someone on the prosecution team, and every email was initially marked relevant, not relevant, or not sure. *See* Oct. 16, 2012, Tr. of Suppression Hearing at 337, 343, 379–80. Team members were directed to consult with the lead agent or prosecutors if questions arose during the review. *See* Oct. 16 Tr. at 359. Accordingly, we believe that it is reasonable to assume that the initial screening process for each document continued for, at a bare minimum, at least 24 hours following a document's initial designation. And although the Government does not concede that later narrowly-tailored searches within the scope of the warrant are foreclosed by the Fourth Amendment, the Government does not intend to use at trial of this case any of:

- the seven documents on Exhibit B for which the designation was changed greater than 24 hours after the initial designation;[6]

- the 96 documents on Exhibit C for which the designation was changed greater than 24 hours after the initial designation; or

---

[5] The Government has a log of all Bates numbers for these documents, but for ease of reference we have labeled them with document numbers for present purposes.

[6] However, to the extent duplicates or near duplicates exist that were marked relevant in the first instance and whose coding never changed, the Government may use the duplicate or near duplicate at trial. There appear to be two documents with such duplicates — one each from Exhibits B and C — in that category.

- the fifteen multiple-edit documents whose ultimate designation to relevant occurred more than 24 hours after its initial designation as not relevant or "not sure."[7]

As a result, whatever the Court's view of the temporal boundaries of Fourth Amendment reasonableness might be with respect to subsequent searches, the Court need not reach that question here.

                        Respectfully submitted,

| | |
|---|---|
| JACK SMITH, Chief<br>Public Integrity Section | JAIKUMAR RAMASWAMY, Chief<br>Asset Forfeiture/Money Laundering Section |
| By:   */s/ David V. Harbach, II*<br>      David V. Harbach, II, Deputy Chief<br>      Maria N. Lerner, Trial Attorney | By:   */s/ Ann Marie Blaylock Bacon*<br>      Pamela Hicks, Deputy Chief<br>      Ann Marie Blaylock Bacon, Trial Attorney |

---

[7] These documents are D1 through D7, E1, F30, F31, F32, F34, F35, F36, and F37.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of February, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/  Ann Marie Blaylock Bacon*
Ann Marie Blaylock Bacon
Trial Attorney
