| | | |
|---|---|---|
| JACK SMITH, Chief | JAIKUMAR RAMASWAMY, Chief | DAVID B. BARLOW, U.S. Atty (# 13117) |
| David V. Harbach, II, Deputy Chief | Ann Marie Blaylock Bacon, Trial Atty | Karin Fojtik, A.U.S.A. (# 7527) |
| Maria N. Lerner, Trial Attorney | U.S. Department of Justice | U.S. Attorney's Office, District of Utah |
| U.S. Department of Justice | Criminal Division, Asset Forfeiture and | 185 South State Street, Suite 300 |
| Criminal Division, Public Integrity Section | Money Laundering Section | Salt Lake City, Utah 84111-1506 |
| 1400 New York Ave. NW, 12th Floor | 1400 New York Ave. NW, 10th Floor | Telephone:     801.524.5682 |
| Washington, D.C. 20530 | Washington, D.C. 20530 | Facsimile:     801.524.6924 |
| Telephone:   202.514.1412 | Telephone:   202.514.1263 | |

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT G. LUSTYIK, JR., and<br>JOHANNES W. THALER,<br><br>Defendants. | Case No.  2:12-cr-645 (TC) (DBP)<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT LUSTYIK'S MOTION TO REVIEW CONDITIONS OF CONFINEMENT AND RELEASE** |

The United States, by and through undersigned counsel, respectfully files this opposition to Defendant Lustyik's Motion to Review Conditions of Confinement and Release (Doc. 623). The United States incorporates by reference its prior pleadings (and will not repeat here arguments made in those pleadings) on the issue of Defendant Lustyik's detention and motions for his release, namely the Government's Motion for Revocation of Release and for Hearing on Motion (Doc. 169); the United States' Response to Defendant Lustyik's Objection to Magistrate Judge Pead's Order Revoking his Pre-Trial Release (Doc. 241); and the Government's Response to Defendant Lustyik's Motion for Reconsideration of Pre-Trial Release on Bail Conditions (Doc. 531).  The Government shares the Court's desire to maximize the chances that trial proceeds on September 29, 2014.  Nevertheless, Lustyik has failed to meet his burden to show

that his release is remotely necessary to enable him to adequately prepare for trial.  His motion should be denied.

I.     **BACKGROUND**

Defendant Lustyik was initially presented in the Southern District of New York ("SDNY") before Magistrate Judge Frank Maas on October 1, 2012, on the Second Amended Felony Complaint which preceded the Indictment in this case.  Magistrate Judge Maas denied the Government's motion to detain Lustyik without bond pending trial, and instead released Lustyik on $2 million bond along with strict conditions imposed on his release.  The Government appealed Magistrate Judge Maas' decision to Chief Judge Ted Stewart in the District of Utah; Chief Judge Stewart upheld Magistrate Judge Maas' decision, but added additional stringent conditions of release to ensure that Lustyik did not obstruct justice while on release on bond.

On January 16, 2013, the Government moved to revoke Lustyik's release on bond because he violated his conditions of release.  After a hearing before Magistrate Judge Dustin Pead on March 19, 2013, on the Government's motion, and following Lustyik's admission that he did in fact violate his conditions of release, Magistrate Judge Pead ordered Lustyik detained without bond because there were no conditions of release that he could abide by if allowed to remain on release (Doc. 215, Docket Text Order).  Following a *de novo* hearing on May 3, 2013, this Court affirmed Magistrate Judge Pead's decision by Order that same day (Doc. 252).

On November 15, 2013, Lustyik filed a Motion to the District Court for Reconsideration of Pre-Trial Release on Bail Conditions (Doc. 509).  Following a telephonic status conference on January 21, 2014, Magistrate Judge Pead ruled that Lustyik continue to be detained without bond (Doc. 583, Docket Text Order).   Lustyik appealed that ruling in his Objection of Defendant, Robert G. Lustyik to Order Denying His Motion for Reconsideration (Doc. 587); his Objection

consisted of two sentences, stating in relevant part that "Defendant now requests that Judge Campbell review the Magistrate Judge's decision." In light of the brevity of this Objection, and the fact that it did not raise any new issues that were not already addressed in the Government's Response to Defendant Lustyik's Motion for Reconsideration of Pre-Trial Release on Bail Conditions (Doc. 531), the Government did not file any pleading in response. The Court has not yet ruled on this Objection.

On August 14, 2013, Lustyik was indicted in the Southern District of New York on charges of conspiracy, soliciting bribes, theft of government property, and unauthorized disclosure of a suspicious activity report. *United States v. Lustyik, et al.*, No. 13 Cr. 616 (VB). Lustyik was present in New York for his initial appearance on that indictment on September 17, 2013. In that initial appearance, defense counsel waived without prejudice any detention issues in the SDNY case, since Lustyik was already detained in the District of Utah. As a result, Judge Vincent L. Briccetti of the SDNY ordered Lustyik detained pending trial in that case without conducting a detention hearing, but without prejudice to Lustyik later making application for release. Lustyik remains detained without bond in the SDNY case.

During a telephonic status conference with this Court on March 27, 2014, the Court ordered Lustyik to file, by April 3, 2014, a motion to review his conditions of release to determine whether reconsideration of his detention would be necessary to ensure that the trial date in this case (since rescheduled to September 29, 2014 by Order dated April 1, 2014 (Doc. 622)) remained viable. The Court directed Lustyik to limit his argument to the narrow issue of the difficulties defense counsel faced in preparing for a trial that is five months away as a result of Lustyik's incarceration in Utah. Lustyik filed his motion on April 4, 2014 (Doc. 623).

**II.     ARGUMENT**

      A.     Applicable Legal Standard

Though he does not cite to the legal authority underlying his motion, the Government assumes Lustyik files his motion pursuant to 18 U.S.C. § 3142(i), which states in relevant part:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

It is the defendant's burden to show that his temporary release is "necessary for preparation of the person's defense." *See United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011); *see also United States v. Buswell*, 2013 WL 210899 at *5 (W.D.La. Jan. 18, 2013).

In determining whether the defendant has met his burden in showing that his temporary release is necessary, courts generally consider three factors: "(1) the time and opportunity the defendant has to prepare for the trial and participate in his defense, (2) the complexity of the case and volume of information, and (3) expense and inconvenience associated with preparing while incarcerated." *United States v. Cecrle*, 2014 WL 31674 at *4 (D. Nev. Jan. 3, 2014) (*citing Buswell* and *Dupree*).

      B.     Discussion

Lustyik makes four arguments to justify his Motion: (1) his counsel is unable to review and discuss classified information with him under current conditions; (2) it is time-consuming and a waste of resources for his counsel to travel to Utah to review material with him; (3) his counsel cannot effectively communicate with him in preparation for trial; and (4) additional

4

work is needed on the unclassified portion of the case which requires Lustyik's involvement in order to prepare for trial.

As discussed below, Lustyik has failed to meet his burden here.  Applying the three factors considered for motions under § 3142(i), defendant's arguments fail because (1) not only has Lustyik already had ample time and opportunity to date to prepare for his defense, both before and during his incarceration, but ample time remains before trial for him to do so; (2) the complexity of the case and volume of information are insufficient to justify his release, and (3) having court appointed counsel renders the question of the expense of counsel moot.  Even had he a convincing argument as to the inconvenience associated with his incarceration, Lustyik fails to demonstrate why accommodations short of his release couldn't resolve such problem.  Finally, Lustyik does not proffer any set of conditions of release that could be imposed upon him during a temporary release,[1] and even had he done so, both this Court and Magistrate Judge Pead have found that he is not likely to abide by any conditions of release that could be imposed.

For these reasons, Lustyik's arguments are all without merit and his Motion should be denied.  Instead, defense counsel should seek any additional accommodations that may be necessary for his preparation for trial, and to the extent necessary make application to the Court to ensure such accommodations are made.

---

[1] Lustyik had proposed conditions of release in his Motion to the District Court for Reconsideration of Pre-Trial Release on Bail Conditions (Doc. 509, Exhibit 1).  However, those conditions were proposed when he sought release without the possibility of returning to jail absent a further violation of his conditions of release, rather than for a temporary release for the preparation for trial, which would entail him returning to jail once the period of temporary release ended.  Moreover, the conditions Lustyik previously proposed were rejected by Magistrate Pead.  Lustyik does not offer any conditions of release that would be fitting for the purposes of his temporary release for preparation for trial.

*1. Defendant has had ample time and opportunity to prepare for his defense, both before and during his incarceration.*

With respect to the first § 3142(i) factor, Lustyik fails to show why the almost 18 months since the Indictment in this case was returned, and the additional 5 months from now until the trial (bringing the total time since the Indictment was filed to 23 months) are insufficient to permit him to prepare for his defense. Lustyik also fails to point out that for the first 6 months after the Indictment was returned, he was on release and had unfettered access to his counsel to review the discovery that had been provided during that time.[2]

Although the Government completed its production of discovery material by the July 1, 2013, deadline established by the Court,[3] the vast majority of the material had been produced to defense counsel by May 3, 2013, almost a year ago. Specifically, the Government made the following productions:

1. December 5, 2012: 258 pages of material

2. December 19, 2012: 111,966 pages of material

3. December 27, 2012: 472 pages of material

4. February 1, 2013: 8,484 pages of material

5. March 8, 2013: 41,336 pages of material

6. May 3, 2013: 898,932 pages of material. In the letter accompanying this discovery production, the Government noted that 99% of this production (892,925 pages) consisted of material obtained from the laptop of Defendant Taylor and the two hard drives of Defendants Thaler.

7. May 3, 2013: 5 files and accompanying material

---

[2] During the time he was on release, Lustyik was under home confinement and could not use a telephone – conditions that he readily agreed to. Of course, neither of those conditions prevented in-person meetings with his counsel while he was on release.

[3] The Government is aware of its continuing discovery obligations, and has since produced additional material that came into its possession since the July 1 deadline.

8.  May 3, 2013:  6 recordings

9.  July 1, 2013:  19,598 pages of material

10. March 14, 2014:  454 pages of material (of which 128 pages had been previously produced without bates numbers).

Moreover, by the time his conditions of release were revoked, the Government had already produced 121,180 pages of material, not including the production made on March 8, 2013, which the Government assumes was not made in sufficient time for Lustyik to review prior to his March 19, 2013, revocation hearing.

Lustyik does not explain why the 6 months when he was on release were insufficient to review the 121,180 pages produced during that time period, or why the 12 months since he has been incarcerated were insufficient to review the remainder of the material.  He also fails to cite to any cases that support his position.  There are several cases addressing this factor, indistinguishable from the instant case.  In *United States v. Persico*, 1986 WL 3793, at *2 (S.D.N.Y. Mar. 27, 1986), the court found that the defendant had ample time and opportunity to prepare for trial where it had been one year between indictment and trial, he obtained a lengthy continuance of trial in order to file defense motions, and was able to meet with his counsel, with special measures ordered by the court, to help prepare for his defense.

The court in *Dupree* reached a similar conclusion, under circumstances that are analogous to those in this case.  In *Dupree*, the defendant had been on pretrial release for 8 months before his bond was revoked.  Moreover, the time between the original indictment and trial was almost 14 months.  The Court found that defendant had ample time and opportunity to prepare for his trial.  833 F. Supp. 2d at 246.

The defendant in *Ceclre* not only had a full year between when he began receiving discovery and when he filed his § 3142(i) motion, but he also failed to "take[] advantage of his

7

opportunities to utilize the resources available to him." 2014 WL 31674, at *4. Lustyik fails to state what efforts he has made to take advantage of resources and accommodations that might be available to him, so that he could demonstrate that the resources available to him are insufficient and warrant his temporary release under § 3142(i).

Finally, the facts in *Buswell,* which that court found weighed against the defendant's release, are also present in this case. In *Buswell*, the court concluded that "[t]he government has produced documents months ago, complete with indexes of those documents. The government has allowed defense counsel access to documents they do not intend to use and have/will provide copies of all documents on CD/DVD." 2013 WL 210899, at *6. In this case, the Government has, with each production, provided counsel with a detailed discovery log. Additionally, the Government has produced all documents on DVD, in the format requested by each defense counsel, and has provided the defense with all discoverable material in its possession (as well as material that is arguably not discoverable), including material it does not intend to use in its case in chief, to ensure that defendants had the benefit of all discoverable material in this case in preparing their defense.

In all of these cases, courts found that the defendants had ample time and opportunity to prepare for their defense, under circumstances where the defendants had shorter periods of time to prepare for trial than Lustyik has had in this case. For these reasons, Lustyik has failed to establish any justification for his release based on the first § 3142(i) factor.

    2. *The complexity of this case and volume of information provided in discovery do not justify Lustyik's release.*

Lustyik also fails to establish the second § 3142(i) factor, that the complexity of the case and the volume of discovery are sufficient reasons to support his temporary release for preparation for trial. Lustyik fails to point to a single case where these reasons have been

enough. Indeed, courts have routinely held that the complexity of a case and the volume of information provided in discovery, standing alone, are insufficient to show the necessity for temporary release to prepare for trial. *Dupree*, 833 F. Supp. 2d at 249; *Cecrle*, 2014 WL 31674 at *5 ("[h]eightened case complexity is not a basis for pretrial release"); *United States v. Petters,* 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009) ("accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial. This is clearly an absurd result.").

In any event, the charges in this case are straightforward – conspiracy, wire fraud, obstruction of a grand jury investigation, and obstruction of an agency proceeding. The speaking Indictment lays out in detail the Government's theory of the case. The evidence that will be used at trial primarily consists of emails, cell phone data, text messages, consensual recordings, toll records, and bank records. There is, for example, no complex financial analysis that is required to prove any of the charges in this case.

While the volume of discovery is large, the primary reason for this is the data culled from Taylor's laptop and the hard drives from Thaler's computers. As to the latter, the Government does not currently anticipate using any of that data during its case in chief. Moreover, as explained below, the Government will provide the defense with an initial proposed exhibit list, to relieve defense counsel of any burden associated with the volume of discovery. For these reasons, the second § 3142(i) factor militates against Lustyik's application.

> 3. *The expense and inconvenience associated with preparing for trial while incarcerated do not support Lustyik's argument that he should be temporarily released.*

Lustyik's primary arguments in favor of his temporary release relate to the expenses associated with his counsel having to travel to Utah to meet with Lustyik to prepare for trial, and

the inconveniences associated with preparing for trial while he is incarcerated.  Here too he has failed to establish a factual basis to support a finding that his temporary release is necessary.  Moreover, as described in more detail below, there are a number of accommodations that can be made to reduce the inconveniences associated with Lustyik's incarceration and preserve his ability to prepare for trial with his counsel.

### (a) Expense

Lustyik argues that hurdles created by his counsel being situated out of state – that motions have to be prepared to permit his counsel and staff to travel to Utah, there is a delay cause by the necessity to obtain such permission from the Court, travel accommodations have to be made, coordination with the CISO is necessary when classified information must be viewed, and coordination with the U.S. Marshals is also necessary – all factor in favor of his release.  However, because the expenses associated with his having out of state counsel are not borne by Lustyik, but rather by the District of Utah as a result of his having court appointed counsel, this § 3142 factor also weighs against release.  *See Cecrle*, 2014 WL 31674 at *5 ("[a]s [defendant] is represented by appointed counsel, expense of preparation for trial does not weigh in favor of his pretrial release.").

This Court and Magistrate Judge Pead have taken steps to ensure that Lustyik was able to keep his counsel of choice without letting his inability to pay them get in the way, and to ensure any delay associated with bringing on new counsel was avoided.  As is his right, Lustyik initially retained his counsel of choice to represent him in this matter, fully aware that his counsel would have to regularly travel from New England to Utah to represent him in this case.  When Lustyik was no longer able to afford to retain his current counsel, he moved to have his counsel appointed under the Criminal Justice Act ("CJA"), despite the fact that his counsel was

10

not on the CJA list in the District of Utah. This motion was made in or about October 2013,[4] approximately 7 months after his conditions of release were revoked and he was detained. The challenges that this would place on his defense were foreseeable. Despite the additional cost to the District of Utah in using CJA funds to pay for an out of state attorney, Lustyik's motion was granted, to ensure that Lustyik had his choice of counsel, and for the sake of continuity to prevent delay in the progression of this case.[5]

Although not addressing the § 3142(i) factors, the Tenth Court's decision in *United States v. Michael Taylor* is instructive here. In that case, the Tenth Circuit found that the issue of a defendant's legal representation is not a factor in the determination of detention:

> [W]e find no merit to Mr. Taylor's argument that denial of counsel of his choice and denial of effective assistance of counsel are grounds to reject the district court's order of pretrial detention pursuant to 18 U.S.C. § 3142. Beyond the fact that considerations of legal representation play no part in the § 3142 analysis, we note that the district court has, in fact, granted all motions for admission *pro hac vice* filed by attorneys of Mr. Taylor's choosing so that they may represent him.

Nos. 12-4186 and 12-4187, Slip Op. at 3. In Lustyik's case, Magistrate Judge Pead took the further step of granting Lustyik's motion to have his counsel of choice appointed to represent him as CJA counsel. That Lustyik has out of state counsel is not reason to release him.

---

[4] Lustyik filed this motion *ex parte*, and thus the Government was only made aware of it when it was directed to appear before Magistrate Judge Pead on a hearing on this motion on October 16, 2013.

[5] Lustyik also fails to address the fact that he has CJA-appointed local counsel, and fails to explain why his local counsel could not be more actively involved in assisting in the preparation of his defense, as was true of Defendant Taylor.

**(b)    Inconvenience**

The crux of Lustyik's argument to justify his temporary release is that his incarceration is an inconvenience that is interfering with his ability to effectively prepare for trial. As an initial matter, courts have consistently held that inconveniences common to all incarcerated defendants do not render a defendant's release "necessary." *Cecrle*, 2014 WL 31674 at *5; *Buswell*, 2013 WL 210899 at *7 (*same*); *see also Dupree*, 833 F. Supp. 2d. at 246-47 (finding the government's argument on this point persuasive). Consequently, to succeed on this argument, Lustyik would have to demonstrate that the inconveniences he faces go beyond those that incarcerated defendants typically face.

However, Lustyik has failed to explain how the inconveniences he faces go beyond what any incarcerated defendant would face, what steps he has taken to reduce those inconveniences, or whether he has requested this Court to intervene to establish accommodations to reduce those inconveniences.

Furthermore, even assuming Lustyik's problems went beyond those that all incarcerated defendants typically face, Lustyik still has failed to establish that his release is necessary. The Court can take steps to ensure Lustyik can more effectively work with his counsel in preparing his defense.[6] Indeed, courts addressing motions under § 3142(i) routinely take steps to ensure that any inconveniences to incarcerated defendants are reduced. *Dupree*, 833 F. Supp. 2d at 243; *Cecrle*, 2014 WL 31674 at *4; *and Persico*, 1986 WL 3793 at *2.

---

[6] In making its argument, the Government addresses classified and unclassified material separately, as the procedures for Lustyik's review of those two kinds of material differ.

>    (i) <u>Accommodations have and can be made to ensure defense counsel can effectively review classified information with his client</u>.

Lustyik argues that the challenges in his ability to review and discuss classified material with his counsel justify his release pending trial, though his counsel has stated that he will be able to meet the April 30 deadline for filing his CIPA Section 5 motion. March 27, 2014, Tr. at 8-9; 10 (not disputing Court's statement that "you believe that you can meet your April 30 Section 5 disclosure"); 13 (not disputing Court's statement that counsel "will be ready to do your Section 5 on April 30th"); and 19 (not disputing Court's statement that "you can make your April 30th Section 5 disclosure"). Lustyik's Motion contains misrepresentations regarding what accommodations have been made for his review of classified information. Furthermore, Lustyik has not demonstrated that he has taken advantage of an avenue available to him under to Paragraph 14 of the Amended Corrected CIPA Protective Order (Doc. 418) to ensure his ability to review of classified material with his counsel.

As a preliminary matter, the Government is not aware of the full scope of the accommodations made to Lustyik and his counsel in their review of the classified material. The arguments in this Section are focused on the facts currently known to the Government; the Government respectfully suggests that the Court confer with CISO Branden Forsgren to obtain the full details of the accommodations that have been made for Lustyik and his counsel.[7]

The Government understands that Mr. Forsgren, in cooperation with the U.S. Marshals, has created a temporary sensitive compartmentalized information facility ("SCIF") to permit Lustyik and his counsel to review and discuss the classified information which the Government

---

[7] Defense counsel argues that if his client were released, they could simply walk into the SCIF in Washington, D.C., or SDNY to review the material. The Government is not in a position to address the feasibility of this option, and this question is better put to Mr. Forsgren.

has made available to Lustyik.[8]  Mr. Forsgren established this arrangement after learning that Lustyik had been incarcerated, and before the Government began producing classified material to the defense, pursuant to Paragraph 7 of the Amended Corrected CIPA Protective Order. Consequently, there was no delay in defense counsel's ability to begin reviewing the classified material with his client once that material became available.  The Government also understands that this temporary SCIF permits defense counsel to discuss all levels of classified information, including material classified at the "SCI" level.  Thus it is incorrect, as Lustyik states in his Motion, that "certain classified information cannot be present or discussed in the room" (Doc. 623 at 3), that "the defense team and defendant still could not discuss certain classified information because it is not a 'SCIF' and such discussions would violate the law" (*id.* at 4), and that "the defense cannot communicate in any fashion with the defendant regarding SCI or certain classified material nor can the CISO bring it to be reviewed because there is no proper facility in Utah as it currently exists." (*Id.* at 7).

     Defense counsel has had the opportunity to discuss the current arrangements with Mr. Forsgren at any time, before or after he was able to begin reviewing the classified material.  The Government does not know whether he did so (and Lustyik's Motion does not state whether he did so), but merely points out that the CISO's role is to assist all parties in the handling of classified information in this case, and defense counsel have an obligation to work with the CISO to ensure that reasonable accommodations are made for their review of the classified material. Paragraph 14 of the Amended Corrected CIPA Protective Order specifically addresses this issue:

---

[8]  As noted in the March 27, 2014, telephonic conference, the Government has created a separate DVD of the subset of classified material that Defendant Lustyik is permitted to review, and has instructed Mr. Forsgren to make this DVD available to Defendant Lustyik through his counsel for use in the temporary SCIF.

> <u>Area of Review</u> - The CISO shall arrange for an appropriately approved Secure Area for use by the defense. The CISO shall, in consultation with the United States Marshals Service, establish procedures to assure that the Secure Area is accessible to the defense during normal business hours, after hours, and on weekends. The Secure Area shall contain a separate working area for the defense and will be outfitted with any secure office equipment requested by the defense that is reasonable and necessary to the preparation of the defendants' defense in this case. The CISO, in consultation with defense counsel, shall establish procedures to assure that the Secure Area is maintained and operated in the most efficient manner consistent with the protection of classified information and the needs of the defense. . .

Although the creation of a fully functional SCIF is likely not feasible in this situation, Lustyik has not demonstrated that he needs a fully functional SCIF merely to review classified information with his counsel. In any event, the Amended Corrected CIPA Protective Order allows the CISO to make accommodations to assist defense counsel in reviewing classified material with his client. Moreover, as Mr. Calabro has already done, Mr. Mansolillo has the opportunity to review the full universe of classified material in Washington, D.C., to narrow down the list of materials he needs to review with his client. This would allow him to focus his time with his client on material that requires additional clarification. He can also use that opportunity to review the full universe of material currently housed in Washington, D.C., which includes material his client is not permitted to see.

That the temporary SCIF available to Lustyik and his counsel is not certified,[9] as defense counsel alleges, is beside the point. As the Court is aware, Mr. Forsgren has available to him tools to ensure that such temporary SCIFs can be prepared to accommodate the Court and counsel in this case, and the temporary SCIF has been made available to Lustyik to

---

[9] The Government does not have sufficient information to determine the accuracy of this statement, but even if true, it would not change the analysis.

accommodate his need to discuss classified material with his counsel. That the new courthouse in the District of Utah will not have a SCIF is similarly beside the point, because a temporary SCIF can be made available to Lustyik in the new courthouse.[10]

The Government respectfully suggests that the Court discuss the current accommodations available to Lustyik and his counsel with Mr. Forsgren and Mr. Mansolillo, and whether any additional necessary, reasonable, and feasible accommodations can be made.

> (ii)   Accommodations can be made to ensure defense counsel can effectively communicate with his counsel on matters related to unclassified discovery.

Lustyik argues that his continued incarceration makes it difficult for him to effectively communicate with his counsel to prepare for trial. He states specifically that the facilities are not conducive to an efficient and effective prep session with his counsel, that his defense investigators do not have easy access to him when they need his assistance in conducting interviews, and the U.S. Marshals "protest" a lack of man power when his counsel seeks additional accommodations.

As this Court is aware, counsel for Defendant Taylor had similar concerns, which he repeatedly addressed to the Court in an effort to have his client released. This Court ruled that those concerns did not justify releasing Defendant Taylor, but took a number of steps to ensure that the U.S. Marshals made every reasonable accommodation to defense counsel to ensure his

---

[10] Lustyik also argues that the current arrangement is insufficient because defense investigators need to have access to Lustyik during the course of conducting interviews, particularly because "in some instances [questions] can only be answered and explained by Mr. Lustyik due to their classified nature and his position as an FBI Agent/Intelligence Officer," Doc. 623 at 6. The Government is not entirely clear about what classified information defense investigators seek to obtain from or discuss with Lustyik, but the Government has made defense counsel aware, by letter dated February 5, 2014, of the prohibition in Paragraph 18(b) of the Amended Corrected CIPA Protective Order on using classified information provided by the Government to "pursue leads or in the defense of the defendant."

ability to communicate with his client in preparation for trial. Although Lustyik and his counsel were in the courtroom during a number of such requests from counsel for Defendant Taylor, which this Court granted, to the Government's knowledge Lustyik has not requested that similar accommodations be provided to him.

Additionally, defense counsel has not explained why his local counsel (who was present in the courtroom during the March 27 status conference) is not more actively involved in the preparation of this case. Defendant Taylor's local counsel was so involved, and as the Government understands, spent a great deal of time going through the evidence with Defendant Taylor at the jail. Lustyik's local counsel, who is also CJA appointed, can do the same.

Because additional unexplored options are available to Lustyik to ensure he can efficiently communicate with his attorney and prepare for his defense, and because "considerations of legal representation play no part in the § 3142 analysis," *Taylor*, Slip Op. at 3, his motion should be denied and those other options pursued.

>   (iii)   <u>The Government will ensure that defense counsel's preparation for trial is streamlined by providing initial proposed exhibit and witness lists.</u>

During the March 27 telephonic status conference, the Government agreed to provide the defense with non-binding initial lists of exhibits and witnesses expected to be used and called at trial. This Court formalized that obligation in its Order dated April 1, 2014, (Doc. 622), giving the Government until May 1, 2014, to do so. The provision of these lists is intended to address defense counsel's concerns about the volume of material that needs to be reviewed in order to be ready for trial by September 29, 2014. The Government expects to comply with the Court's Order ahead of the May 1 deadline.

To further assist Lustyik in his preparation of his defense, the Government will provide Lustyik's counsel with two identical DVDs of the material noticed in its initial proposed exhibit list, so that the two of them can simultaneously review this material in light of the no-contact rule at the jail.

The Government also represents that of the 892,925 pages of material obtained from Defendants Taylor and Thaler's hard drives (consisting of approximately 82% of the total production), the Government will use only a very small fraction of this material, as will be specified in the exhibit list the Government will produce to counsel.

      4.    *There are no conditions of release the Court could establish that Lustyik is likely to abide by.*

Although not formally a factor in a § 3142(i) analysis, courts have considered prior decisions of detention in making decisions under § 3142(i). *Dupree*, 833 F. Supp. 2d at 247 (defendant, who had been on release and then had his bond revoked, "has not shown by his past conduct that he can be taken at his word to abide by any additional conditions if he were again released"); *Buswell*, 2013 WL 210899 at *9 ("even if released he may likely be revoked again for violating the conditions of his release"); *United States v. Bolze*, 2010 WL 199978 (E.D. Tenn. Jan. 13, 2010) at *3 (defendant's release under any set of conditions continues to pose a serious risk of flight); *Persico*, 1986 WL 3793 at *2 (*same*).

In his Motion, Lustyik offers no set of conditions of release that would ensure he would not present a serious risk of obstruction of justice; it was on this basis that the Government moved to detain Lustyik for violation of his conditions of release (providing money to a witness in this case). Defendant did proffer such a set of conditions in his Motion to the District Court for Reconsideration of Pre-Trial Release on Bail Conditions (Doc. 509, Exhibit 1), but as the Government pointed out in its opposition to that motion, those conditions were even less

stringent than the conditions imposed by Magistrate Judge Maas and Chief Judge Stewart, which Lustyik violated within days of when those conditions were imposed. Indeed, Magistrate Judge Pead found during the March 19 hearing on the Government's motion to revoke Lustyik's bond that "I am unfortunately left with the opinion that I simply cannot impose any conditions that he is likely to abide by or combination of conditions that would justify the release." Mar. 19, 2013 Tr. at 157-58. This Court upheld Magistrate Judge Pead's ruling.

Moreover, the conditions of his release that appear to be contemplated by his Motion would give Lustyik even more leeway than he had previously been afforded when he was on release. This would give Lustyik more opportunity to continue to obstruct justice without being caught, since pre-trial services officers would not be able to closely monitor him if he traveled to Washington, D.C. for extended periods of time to review classified material in a SCIF.[11]

That this Court and Magistrate Judge Pead have found that there are no conditions of release that Lustyik is likely to abide by should also factor against granting Lustyik's Motion.

## III.   CONCLUSION

For all of these reasons, including Lustyik's failure to meet his burden, the above steps the Government is taking to assist counsel in preparing for trial, and the additional accommodations that defense counsel can seek through the Court and the CISO, Lustyik's motion should be denied.

---

[11] If the Court determined Lustyik's temporary release was necessary, and there existed a set of conditions of release that could be fashioned which Lustyik was likely to abide by, Lustyik would remain detained in the SDNY case. Although Judge Briccetti has made it clear that he would entertain a bail application promptly, that court has yet to make any determination on whether adequate conditions could be crafted to justify Lustyik's release.

Respectfully submitted,

| | |
|---|---|
| JACK SMITH<br>Chief | JAIKUMAR RAMASWAMY<br>Chief |
| By: */s/ Maria N. Lerner*<br>David V. Harbach, II, Deputy Chief<br>Maria N. Lerner, Trial Attorney<br>Public Integrity Section | By: */s/ Ann Marie Blaylock Bacon*<br>Ann Marie Blaylock Bacon, Trial Atty<br>Asset Forfeiture/Money Laundering Section |