DANIEL CALABRO, JR. (*admitted pro hac vice*)
24 Pettaconsett Ave.
Suite F
Cranston, RI 02920
Telephone:     (401) 390-3342
Facsimile:     (888) 461-1955
calabrolaw@cox.net
calabrolaw@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff<br><br>v.<br><br>ROBERT G. LUSTIYK, JR., MICHAEL L. TAYLOR, and JOHANNES W. THALER<br><br>    Defendants | Criminal No. 2:12-cr-00645 (TC)<br><br>Honorable Tena Campbell |

**DEFENDANTS JOHANNES THALER AND ROBERT LUSTYIK'S
JOINT MOTION TO CONTINUE TRIAL DATE**

Defendants Johannes Thaler and Robert Lustyik (hereinafter collectively "Defendants") hereby move this Honorable Court to Continue the trial date for this matter which is currently scheduled for September 29, 2014.  As grounds in support of their Motion, Defendants state the following:

1

**Facts and case travel**

To date, defendants have received in excess of two million pages of discovery as it relates to the instant case. This Court had previously Ordered that all discovery be turned over to the defendants on or before July 1, 2013 [Doc. 256]. The government has been producing and re-producing discovery even as late as May 28, 2014. The government has abused the good nature of this Court's allowance of time to produce discovery and has turned it into a mechanism to obstruct and impede the defendants' access and review of discovery.

The government recently notified the defendants that due to yet another spillage of alleged classified information by the government, whereby alleged classified information was mistakenly turned over to the defendants in non-classified discovery, that defendants were going to be required to return four full productions of non-classified discovery over to the CISO and that the government would "replace" the discovery with "re-productions" of the affected productions.[1,2]

Since their initial production, the government has been providing discovery to the defendants on what they refer to a "rolling basis" with significant time lapsing between each production. When defendants obtained productions they would upload them into their computer system. Immediately thereafter, both counsel for the defendants as well as

---

[1] In one of its letters the government attempted to impute knowledge of the classified information upon counsel for the defendants due to their possession of security clearances however, not only is the alleged classified information lacking any type of classified markings but counsel has no way of knowing what is classified and what is not. Furthermore, all of the members of the government who have and are reviewing the discovery presumably possesses security clearances and still produced these materials to the defendants.

[2] This is not the first time that the government has recalled discovery and placed defendants in this situation. On a prior occasion the defendants were Ordered to return another hard drive as well as a DVD because of another "spill" by the government. Instead of allowing the defendants to remove the six affected pages from their system, they were required to return and delete volumes of material whereby setting them back yet again.

their investigators would begin to review the discovery. The method of review of the discovery in this case, due to the actions of the government, is extremely important as it relates to this Motion.

**Defendants' method of review of discovery**

After uploading the discovery into their systems, counsel for defendants would create an exact copy of the Production so that defendants would have a working set of documents that could be marked up, deleted, etc., without affecting the original documents. Counsel and their investigators would then review the copy of the original documents. In doing so, they would delete any documents which were clearly unnecessary for the preparation of their case as they went through their review so that there weren't documents in the system that were not pertinent and so that other individuals were not reviewing materials unnecessarily in an effort to expedite the review. When counsel or investigators found information that was important to their case, said documents were then tagged so that everyone knew that the documents were important to the case. This process continued as parties went through each and every document, one by one.

After all of the important documents were marked, they were then moved into sub-folders so that any document relating to a specific witness, event, day, etc. were all together. For example, if Mr. Jones was a witness, there may be some statements from Mr. Jones in Production 2, then there may be some reports by Mr. Jones in Production 5, and there may be an interview Mr. Jones in Production 9.[3] All of these documents would

---

[3] This was exactly how the Productions were made in this case with information from witnesses appearing in multiple productions, emails from defendants in multiple productions, etc., all making the review of the discovery more time consuming. This could have only been done purposefully by the government in an attempt to impede defendants' review of discovery and preparation.

be placed into a sub-folder called "Mr. Jones" so that all of the information relating to him was in one location as this would expedite the review of the documents and assist in preparation for trial. This process continued as defendants continued to review the nearly two millions pages of documents which were produced in this case.

After placing all of the documents into their respective folders, counsel and investigators would then begin an in-depth review of every document which was not initially found to be unnecessary.[4] During this review, documents were read in full and checked for relevant or pertinent information. If the defense team decided that any of these documents were still not helpful even after a thorough review, they would be moved into a separate folder so that they weren't reviewed again unnecessarily.

As documents were reviewed by each member of the defense team, relevant documents were marked up by members of the team. These marks included highlight, notes, comments, etc. All of this work was performed on the copies of the originals so as to still keep the integrity of the original document. Defense team member would collaborate and all work off the same set of documents so that efforts were not duplicated. These markings and notes that were placed on these documents were the only copies of the notes and documents that the defense team was working from. Defendants did not keep hand written notes nor were documents printed out in hard copy as not only was this not necessary but it was also a less efficient way to work as there was no way to keep track of work that had been already done by others on the same document.

---

[4] Defendants were able to immediately remove several documents due to the fact that the government had performed a "data dump" on the defendants and in doing so they include "spam" emails in the discovery

**Return of the discovery**

On or about May 19, 2014, defendants filed a Motion with this Court whereby asking the Court to intercede and preclude the government from obtaining the original productions of discovery from the defendants. [Doc. 667]  In their Motion, defendants asked for a stay on returning the documents to the government or that in the alternative the government provide them with the bates numbers of the alleged affected documents and that defendants be allowed to remove just the affected documents rather than return all of the work that they had already performed.[5]  Without hearing or a Reply from the government this Court denied defendants' Motion.  As a result, the defendants were Ordered to return the tainted productions to the government on or before May 30, 2014.  On May 28, 2014, counsel for defendants were contacted by the CISO's office and advised that they would be sending a CISO to their office to obtain the infected productions.  The productions were turned over to the CISO on May 29, 2014, by both defendants.

As a result of the government's spillage and of this Court's Order, not only were defendants required to return the original productions that were provided by the government but they were also instructed that they were to remove and delete any and all electronic copies of any of the documents which were in Productions 2, 5, 6 & 9.  As such, defendants are no longer in possession of any of their notes, comments, etc., as it

---

productions.  These types of documents were immediately removed and a cursory review was completed on every other document before it was marked and then all relevant documents were thoroughly reviewed.
[5] The government was aware that defendants would be required to return all of the documents from the prior productions and was further aware that defendants would again be starting at square one yet they provided for no other recourse other than returning and deleting everything that the defendants had already worked on.  Defendants assert that this was done purposefully by the government to again place the defendants at a disadvantage.

relates to any of the documents in the production. Furthermore, defendants have no way of knowing which documents were relevant or irrelevant to their case as ***all of the work product that was produced by the defense team as it relates to any documents in the affected productions has been destroyed*** in accordance with the Order of this Court.

On or about May 28, 2014, defendants received "re-productions" of government Productions 2, 5, 6 & 9. These four productions comprise of more than half of the total discovery that has been produced by the government. Although defendants cannot tell the Court how many documents were sent back to the government in the tainted productions defendants can tell the Court that the total number of pages that have been "re-produced" to the defendant is in excess of ***one million pages***.

### Counsels' Continuing Duty to Represent

As stated above, defendants have no information as it relates to the original review of the original discovery and as such they will be required to again review all of the documents that have been re-produced by the government. Counsel for the defendants has both a legal and ethical duty to their clients to review each and every document that has been re-produced by the government. If the defense team does not review every document that has been recently turned over by the government they would be committing professional malpractice and violating the Rules of Professional Conduct.

The defense team, on average, has been able to review approximately 60 pages of discovery per hour. Due the fact that much of this information has been reviewed once already, the re-review should be able to occur a little more quickly. Defense estimates that in a best-case scenario they would be able to review 100 pages per hour.[6] There are

---

[6] Defense bases their estimations on articles which have been previously provided to the Court. Specifically defendants rely on the research that was covered in "Where the Money Goes: Understanding

1,075,800 pages of discovery in the most recent productions. Even at a rate of 100 pages per hour per person, if counsel and their investigators review this material on a full-time basis, the best that the defense team could do is review 3,200 pages in an 8 hour day.[7] At this rate, it would take the defense team 336 calendar days to review all of the documents that the government has re-produced in this last batch of discovery

In closing, it is impossible for the defendants and their defense team to properly prepare for trial and review these new documents by the Court's deadline on September 29, 2014. This is of *no fault of the defendants*. The only party responsible for this delay is the government and forcing the defendants to proceed to trial on September 29, 2014 will be extremely prejudicial to defendants and will cause them irreparable harm.

WHEREFORE, the defendants pray that the Court grant the following relief:

1. That the trial date which is currently set for September 29, 2014 be vacated;
2. That the trial date be continued to a time that will allow defendants to properly prepare their defense;
3. That the Court Order that if there are any further spillages by the government that the Court will intervene and that defendants will no longer be required to return entire productions, rather they can just remove the affected documents;
4. Any further relief that this Court deems just.

.

---

Litigant Expenditures for Producing Electronic Discovery," and "Managing Discovery of Electronic Information: A Pocket Guide for Judges."
[7] This calculation uses an estimate of 8 hours per day for each of the attorneys as well as the two investigators.

Respectfully submitted,

Johannes Thaler
By his attorney,

/s/ Daniel Calabro, Jr.
Daniel Calabro, Jr., Esq.
24 Pettaconsett Ave.
Suite F
Cranston, RI 02920
401-390-3342(tel)


Robert Lustyik, Jr.,
By his attorney,

/s/ *Raymond Mansolillo, Esq.*
Raymond Mansolillo, Esq.
100 Federal Street
Suite 1900
Boston, MA 02110
617-342-7181

## **CERTIFICATION**

I hereby certify that on the 4th day of June, 2014, I filed this Response electronically through the CM/ECF system for the Utah Federal District Court.

*/s/ Daniel Calabro*