JACK SMITH, Chief
David V. Harbach, II, Deputy Chief
Peter M. Koski, Deputy Chief
Maria N. Lerner, Trial Attorney
U.S. Department of Justice
Criminal Division, Public Integrity Section
1400 New York Ave. NW, 12th Floor
Washington, D.C. 20530
Telephone:   202.514.1412

JAIKUMAR RAMASWAMY, Chief
Ann Marie Blaylock Bacon, Trial Atty
U.S. Department of Justice
Criminal Division, Asset Forfeiture and
    Money Laundering Section
1400 New York Ave. NW, 10th Floor
Washington, D.C. 20530
Telephone:   202.514.1263

DAVID B. BARLOW, U.S. Atty (# 13117)
Karin Fojtik, A.U.S.A. (# 7527)
U.S. Attorney's Office, District of Utah
185 South State Street, Suite 300
Salt Lake City, Utah 84111-1506
Telephone:        801.524.5682
Facsimile:         801.524.6924

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         vs.<br><br>ROBERT G. LUSTYIK, JR. and<br>JOHANNES W. THALER,<br><br>                    Defendants. | Case No.  2:12-cr-645 (TC) (DBP)<br><br>**GOVERNMENT'S RESPONSE TO<br>DEFENDANTS' MOTION TO CONTINUE<br>TRIAL DATE** |

The United States, by and through undersigned counsel, opposes defendant Johannes

Thaler and defendant Robert Lustyik's motion to continue the trial date in this case ("Motion to

Continue").  (Doc. 679).  Because of the public's interest in a speedy trial and the fact that

defendants' concerns can be addressed by methods less drastic than the one-year trial

continuance they appear to seek, the Government respectfully requests that defendants' Motion

to Continue be denied and that the trial commence on September 29, 2014.

I.    **Factual and Procedural Background**

Between December 2012 and July 2013, the Government produced the vast majority of

unclassified discovery to defendants in this case.[1]  The discovery productions were made on a

---

[1]      On April 15, 2014, Magistrate Judge Pead granted the Government's motion to produce
tax records and a protective order governing the same.  (Doc. 626).  The protective order
provides that defendants and defense counsel are to "file an acknowledgement of the Order

rolling basis as the Government received clearance from various agencies to release the materials and as the Government was able to process technologically complicated materials such as defendant Thaler's hard drives.  The Government made the productions in the formats requested by defendants and repeatedly warned defendant Lustyik that his choice to receive the productions in PDF format rather than as load files would limit his ability to do text searches of the documents.  With each production the Government included very detailed production logs that described the documents being produced.  For example, all transcripts are described by the bates number, interview date, and the witness's name, and each memorandum of investigation is described by the bates number, date, the agent's name who drafted it, and the subject of the memorandum.

On May 2, 2014, the Government informed the Court and defendants that certain productions would need to be returned to the CISO because they contained classified information.  (Doc. 640).  On May 6, 2014, the Government sent a letter to defense counsel asking that certain productions, and copies of those productions, be returned to the CISO.  (Doc. 652, Ex. A).  The Government never requested that defendants destroy any of the productions. On May 15, 2014, defendants filed a motion to enjoin the Government "from compelling the Defendants to return discovery  materials."  (Doc. 667).  The motion lacked the detail contained in the instant motion as to how returning the productions would impact defendants.  In particular, the motion did not describe the process by which defendants were reviewing and tracking the documents they reviewed and the specific burden that would result from having to return the productions.  Further, defendants did not attempt to meet and confer with the Government to

within 10 days of the date of the Order."  (Doc. 626 at 3, adopting protective order described in Doc. 619).  To date, defendants have not filed an Acknowledgement of the Order.  The Government will produce the tax records once defendants and defense counsel file their acknowledgement of the protective order.

identify ways to alleviate the burden of returning the productions.  On May 20, 2014, the Court denied the motion and ordered defendants to *return* the original versions . . . including all copies, digital or otherwise, to the CISO by May 30, 2014" ("May 20 Order").  (Doc. 668 at 5) (emphasis added).   Nowhere did the Court order defendants to destroy any copies of the productions.

On May 27, 2014, the Government sent defendants replacement productions of all documents except those documents implicating Agency 1's or Agency 2's interests ("May 27 Reproduction").  On May 30, 2014, the Government sent defendants a replacement production of all documents implicating only Agency 1's interests.[2]  On June 4, 2014, defendants filed the instant motion seeking continuance of the trial for an indeterminate period of time.[3]

Defendants' Motion to Continue listed the number of pages of documents that were produced to defendants in the May 27 Reproduction.  Upon reading those numbers in the brief, the Government realized that its Litigation Support Group ("LSG") reproduced too many documents, namely the suppressed documents.[4]  Upon learning that the suppressed documents had been reproduced, the Government was concerned that Agency 1 and Agency 2 would require the Government to claw back the May 27 Reproduction, because the suppressed documents had not been searched for classified information.  The Government immediately contacted Agency 1

---

[2]    Agency 2 completed its review of documents implicating its interests on June 4, 2014. Per the Court's order (Doc. 668) those documents will be reproduced no later than June 18, 2014.

[3]    Defendants do not suggest an alternate trial date, but argue that it would take them 336 days to review the reproductions.  (Doc. 679 at 7).

[4]    LSG created the May 27 Reproduction by copying prior productions residing on hard drives and removing the documents containing classified information rather than doing a reproduction out of Relativity, which would have excluded the suppressed documents because they no longer exist in the database.  At no point in the reproduction process did the prosecution team look at, review, or search the suppressed documents.

and Agency 2 and asked that they reconsider their position that the suppressed documents not be reproduced to defendants unless the documents underwent a classification review. Because the agencies were unable to provide definitive answers by June 12, the Government asked for a brief continuance to respond to the instant motion (Doc. 684), which was granted on June 13, 2014. (Doc. 685). On June 16, 2014, the agencies notified the Government that they would not require the Government to claw back the May 27 Reproduction, provided that the Government sends a letter to defendants and the Court stating that defendants are on notice of the subject matter of certain classified information because of portion markings on the reproductions of documents involving Agency 2's equities and the admonishment provided by Agency 2, and should they wish to use such information they must notice it in their CIPA Section 5 filing, even if the Government has not clawed back the specific document.

While reproducing only the non-suppressed documents would cost the Government significant time and money, upon further review of the Court's May 20 Order, the Government believes that it could be read to require the Government to reproduce only those documents not suppressed. Further, as discussed more fully in *infra* Part III.D., removing the suppressed documents could streamline defendants' review of the documents, and benefit the defense, as the suppressed data constitutes almost three-quarters of the material reproduced to defendants. LSG is currently working on a reproduction should that interpretation be accurate or should the Court otherwise order the Government to turn over only the non-suppressed documents. The Government estimates that such a reproduction will be complete on or about July 9, 2014. Should such a reproduction be required, the Government would request that defendants be required to return all copies of the May 27 Reproduction to the CISO, except for any subset containing defendants' work product.

## II.   **Legal Standard**

The Speedy Trial Act, 18 U.S.C. § 3161, provides that "the appropriate judicial officer, at the earliest practicable time, shall, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain . . . so as to assure a speedy trial." 18 U.S.C. § 3161(a). The interest in a speedy trial belongs to both the defendant and the public. *Zedner v. United States*, 547 U.S. 489, 501–03 (2006). As noted by the Supreme Court, "the [Speedy Trial] Act was designed not just to benefit defendants but also to serve the public interest by, among other things, reducing defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment." *Id*. at 501. As of now the speedy trial clock has been tolled until September 29, 2014. (Doc. 622). Defendants have not requested any further tolling of the speedy trial clock. Accordingly, whether to grant the trial continuance is within the Court's discretion. *See United States v. Diaz*, 189 F.3d 1239, 1247 (10th Cir. 1999); *United States v. Jones*, 730 F.2d 593, 596 (10th Cir. 1984) (*citing Ungar v. Sarafite*, 376 U.S. 575 (1964)).

While there is no specific test district courts must use in analyzing a motion for a trial continuance, the Tenth Circuit in *Diaz* looked to the following four factors in a request to continue a criminal case:

> (1) the diligence of the party requesting the continuance; (2) the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; (3) the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; (4) the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

*Diaz*, 189 F.3d at 1247.

III.     **Argument**

The trial in this case is scheduled to begin just a few weeks shy of the two year anniversary of the Indictment of defendants Lustyik and Thaler.  Since the time of the Indictment, the Government has diligently worked to prepare the case for trial.  The defendants now seek a substantial trial delay based on the reproduction of several affected discovery productions the Government previously provided to defendants.  The defendants' response to this situation, however, was to apparently destroy their own work product, thereby creating their expressed need for a further delay.

The four *Diaz* factors weigh against granting defendants' motion for a continuance in this case.  Because of the public's interest in a speedy trial and the fact that defendants' concerns can be addressed by methods less drastic than a one-year trial continuance, their request should be denied and the trial should commence on September 29, 2014.

A.     **Defendants failed to exercise diligence in ameliorating the impact of the clawback.**

While the clawback of four productions may have caused some limited delay in defendants' preparations for trial, the impact has been exponentially exacerbated by defendants' failure to exercise diligence and prudence in responding to the clawback, and as will be described in detail in Part III.D., does not necessitate a continuance.  In May 2014, the Government requested and the Court ordered that the defendants return all copies of certain productions to the CISO.  (Doc. 668; Doc. 652, Ex. A).  Rather than follow the Court's instruction to return all copies to the CISO, the defendants claim that "they were also instructed that they were to remove and delete any and all electronic copies of any of the documents which were in Productions 2, 5, 6 & 9" and that they did so.  (Doc. 679 at 5–6).  The Court's order,

6

however, does not compel destruction of defendants' *work product*, nor would the Government ever make such a request of defendants.  (Doc. 668 at 5; Doc. 652, Ex. A).

The Court's order compels the return of all copies of the affected productions.  This necessarily includes all copies which may have been altered by counsel through comments or relevance designations during the course of their review of that material.  If such a copy containing their work product existed in some format that was not easily turned over to the CISO, such as a hard drive on a computer, the solution would be to make an exact copy onto a removable hard drive (such as those on which the Government produced discovery to defendants), provide this exact copy to the CISO, and *then* destroy the copy on the hard drive. This simple protocol would have preserved their work product while allowing them to be in full compliance with the Court's order.

Defendants fail to explain why they did not file a motion with the Court seeking clarification of the Court's order, or seeking some other relief short of destroying their work product.  Had defendants met and conferred with the Government or merely done as ordered by the Court and returned all copies — including those copies with work product — to the CISO, a solution could have been crafted to remove the classified documents from the copies of the productions.  For example, the CISO could have been provided with a list of affected bates numbers and he could have then removed the classified documents and returned the copies to the defendants.  Alternatively, defendants could have created a list of bates numbers of the important documents they had identified, so they would not be forced to re-review those once they had received the clean production from the Government.

Had they exercised such diligence, they would have maintained and preserved much, if not all, of their work product.  Instead, defendants destroyed that work product and are now

asking that they be allowed to remain out on bond in this case for perhaps as much as another year, to essentially begin trial preparation anew, while this case languishes.

**B.   Defendants fail to explain how a continuance, if granted, would accomplish the purpose for their need for the continuance.**

Defendants' motion lacks any description of how many documents defendants reviewed before the clawback.  If defendants had reviewed all of the documents prior to the clawback, the Government agrees that if granted a continuance, defendants would likely re-review the documents and the purpose of the continuance would be accomplished.  If defendants had not reviewed the documents, however, the Government does not believe granting a continuance would fulfill the purpose, as defendants previously had almost a year to review the documents and chose not to do so.  Thus the Government lacks sufficient information to know whether if the continuance is granted, it would accomplish the purpose expressed by defendants in their Motion to Continue.

**C.   A trial continuance would negatively impact the Government, the public's interest in a speedy trial, and likely the Court.**

The Government has been diligently preparing for trial for almost two years, including a substantial amount of preparation and litigation pertaining to relevant classified information. The Government interviewed a significant number of witnesses during the course of the investigation of this case, and expects to call many of them at trial.  Witnesses' memories fade over time, particularly since the relevant events occurred several months before this case was indicted — in other words, more than two years ago.  Although the Government recorded most of the interviews of its witnesses, at the end of the day, the jury will hear what the witnesses remember on the day they testify, not what they told the investigators two years prior.  Further delays hamper the Government's right to a fair trial in this matter.

8

The public also has a strong interest in seeing this case proceed to trial expeditiously. Both defendants have been indicted in another case in the Southern District of New York ("SDNY").  Defendant Thaler will have been on pretrial release in this case for almost two years if the case goes to trial September 29, 2014.  Defendant Lustyik was on pretrial release for almost five and a half months before his bond was initially revoked for having $26,000 in cash delivered to a potential witness within weeks of his initial release.  He has now been released in this case and is seeking release in his other case pending in SDNY. (Doc. 89, *United States v. Lustyik*, 7:13-cr-616 (SDNY)).  Given this level of criminality, the public has a statutory interest in seeing this case proceed to trial as expeditiously as possible.

Defendants' repeated requests for delays will likely cause scheduling problems with this Court's calendar, given that the Court has had to set aside four weeks for the trial in this case, and has already adjusted the trial date by two weeks to accommodate defense counsel.  These requests for delays are also causing scheduling problems in coordinating this case with the case pending in SDNY.  If this case does not go to trial on September 29, Judge Bricetti has made it clear that he intends the SDNY case to proceed to trial on November 17.[5]  Thus, counsel for defendant Lustyik[6] will not be available for trial or to prepare for trial in this matter during the time that he is in trial in the SDNY case.  That means this case is unlikely to proceed to trial before 2015.  If defendants ask for a continuance in the SDNY case as well, additional scheduling problems will be created in ensuring the two trial dates do not overlap.

---

[5]    The prosecution team in this case understands that there are still remaining matters to be resolved regarding classified information in the SDNY case, and does not know whether that will necessitate a continuance in the trial date in the SDNY case.

[6]    Defendant Thaler has different counsel in the SDNY case.  Defendant Lustyik's counsel is retained, not appointed, in the SDNY case.

**D.      Defendants' asserted need for a continuance can be addressed through other means, thus permitting defendants to proceed to trial as scheduled without prejudice.**

The defendants' asserted need for a continuance is an issue of resources, not time.  Other, less drastic, measures would alleviate defendants' concerns more effectively than a delay of the trial.  Defendants allege two attorneys and two investigators are unable to complete the document review in time for the currently scheduled trial date.  There are three ways to effectively address this problem without a trial continuance.

First, Mr. Mansolillo, Mr. Calabro, and their investigators are not the only persons capable of doing document review.  Rather than use the CJA funds over the course of a year to pay Mr. Mansolillo and Mr. Calabro to review the documents, the Court could allocate the funds such that they are paid over a more compressed time period to add additional document reviewers to the defense team.  Additional paralegals or investigators could be hired to assist in the review of the discovery in this matter, under Mr. Mansolillo's and Mr. Calabro's guidance.  This happens with regularity within both private practice and the government.

Second, defendants should be using electronic document review software to aid and expedite the review rather than going through the documents PDF by PDF.  At Mr. Calabro's request, the Government has already provided the documents to him as load files.  Given this request, the Government assumes he owns or has access to electronic document review software.  Accordingly, the defendants should be able to immediately load the documents into an electronic document review platform.  Should Mr. Calabro not have an electronic document review platform, the Court could allocate CJA funds for such an expense.  With a document review platform, defendants could use key words, search terms, and metadata (such as sender, recipients, and date) to limit the number of documents to be reviewed.  Given their prior review

of the documents and the fact that many of the documents came from defendants themselves, they should be able to easily and accurately narrow the universe of documents to be reviewed. The Government also provided detailed production logs for the materials and provided defendants with a draft exhibit list, which should also significantly aid defendants in their review of the discovery materials.

Finally, because 731,236 of the 1,073,467 pages[7] in the May 27 Reproduction were suppressed, a reissuance of that reproduction with those documents removed will greatly help defendants streamline their review.  On a purely mathematical basis using defendants' own calculations and with no additional reviewers added, it would only take 106 days to review the non-suppressed documents.  And more importantly, from a substantive perspective, it would focus the defendants on the documents most relevant to the case and those that the Government has available to build its case.

With these accommodations, the harm defendants might suffer if the Court denies the continuance is minimal if non-existant.

WHEREFORE, for the reasons stated above, the Government respectfully requests that the Court deny defendants' motion to continue the trial date.[8]

---

[7]     The vast majority of the suppressed documents were documents the government never seized, namely the voluminous files from defendant Thaler's hard drives.

[8]     Should the Court grant a continuance the Government respectfully requests that the Court confer with Judge Bricetti before setting a new trial date.

Respectfully submitted,

JACK SMITH                                  JAIKUMAR RAMASWAMY
Chief                                       Chief

By:   */s/  Maria N. Lerner*          By:   */s/  Ann Marie Blaylock Bacon*
      David V. Harbach, II, Deputy Chief         Ann Marie Blaylock Bacon, Trial Attorney
      Peter M. Koski, Deputy Chief               Asset Forfeiture/Money Laundering Section
      Maria N. Lerner, Trial Attorney
      Public Integrity Section