IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>ROBERT G. LUSTYIK, JR., and<br>JOHANNES W. THALER,<br><br>Defendants. | **ORDER &<br>MEMORANDUM DECISION<br>ON<br>MOTION TO CONTINUE**<br><br><br><br><br>Case No. 2:12-CR-645-TC-DBP |

Defendants Robert Lustyik, Jr. and Johannes Thaler filed a Joint Motion to Continue

Trial Date (Doc. No. 679).  This case is set to go to trial on September 29, 2014.  The Defendants

asked the court to continue the trial indefinitely, and suggested that trial needs to be delayed for

at least one year.  The court issued an order denying the motion, noting that the reasons for its

denial would come in a separate order.  (See June 23, 2014 Order (Doc. No. 696).)  This is that

order.  For the reasons set forth below, the Defendants' Joint Motion to Continue the September

29, 2014 trial date is DENIED.

**PROCEDURAL BACKGROUND**

In their motion, Defendants argue that they cannot be prepared for trial on September 29,

2014, because (1) they destroyed all of their work product associated with their document review

of four sets of unclassified discovery productions (Production Sets 2, 5, 6, and 9); and

(2) recreating that work product will take them 336 calendar days.  (See Doc. No. 670 at 5-7.)

To understand the nature of the Defendants' claims and request for a continuance, and to provide

context for the court's decision, the court sets forth a procedural history of the case as it relates to

discovery.

This case was indicted a year and a half ago.  By the time the case goes to trial, it will be

nearing its second anniversary.

On October 18, 2012, the United States indicted Defendants Robert Lustyik, Michael

Taylor, and Johannes Thaler with one count each of conspiracy, obstruction of a grand jury

proceeding, and obstruction of an agency proceeding, as well as eight counts of wire fraud.  By

December 2012, the Government had provided the Defendants with three document productions.

Initially, the Government anticipated producing "over 150,000 pages of material to defense

counsel in the electronic format of defendants' choosing."  (Order Excluding Time from the

Speedy Trial Act (Doc. No. 160) at 2.)  The Government notified the court that it expected that

two issues might delay the completion of discovery: (1) the process of searching for, identifying,

and producing discoverable material that is classified, consistent with both its discovery

obligations and the Classified Information Procedures Act, Title 18, 18 U.S.C. App. III. (CIPA),

in addition to defense counsel obtaining security clearances in order to review the classified

discovery materials; and (2) potentially privileged information collected during the course of the

investigation.  In March 2013, the court inquired into the status of discovery and was informed

that the majority of the discovery had been provided, with the exception of documents containing

classified information.

On May 3, 2013, the court held a hearing and scheduled a five-week trial beginning

November 12, 2013.  At the hearing, the Government informed the court that it had reviewed all of the potentially classified information and had begun reviewing it with different agencies to determine the appropriate redactions under Section 4 of CIPA.  The Government stated that it would soon begin providing classified discovery to cleared counsel "on a rolling basis."  (May 3, 2013 Hr'g Tr. (Doc. No. 254) at 13.)  At the time, Mr. Taylor and Mr. Lustyik were both in custody.

On May 6, 2013, the court entered a scheduling order that set a July 1, 2013 discovery deadline for the United States and a reciprocal discovery deadline of October 1, 2013, for the Defendants.  (See Doc. No. 256.)  These discovery deadlines did not include the production of all classified information.  By June 29, 2013, the Government had nearly completed its unclassified discovery and had produced over one million pages of material to the defense.

On July 1, 2013, Co-Defendant Michael Taylor (who has since pled guilty), filed a motion to suppress.  On the same day, Mr. Lustyik and Mr. Thaler filed a motion for extension of time to file a motion to suppress.  Magistrate Judge Dustin Pead granted the motion in part by extending the deadline for filing a motion to suppress to August 1, 2013, and stated that "[a]ny motion seeking a further continuance of the deadline must establish specific good cause."  (July 2, 2013 Docket Text Order (Doc. No. 313).)

On August 13, 2013, Mr. Lustyik and Mr. Thaler were indicted on separate federal criminal charges in the Southern District of New York (SDNY).  (See Criminal Complaint filed on August 2, 2013, in United States v. Lustyik, et al., Case No. 13 Cr. 616 (VB) (S.D.N.Y.).)

On October 15, 2013, the court held a hearing on the motions to suppress.  After the evidentiary hearing and oral arguments, the court denied the motion to suppress but ordered that

3

certain documents the Government volunteered to withhold be suppressed, which included "all documents from the Relativity database that were not marked 'Relevant' within twenty-four hours of the first review (as listed in the exhibits to the United States' Second Supplemental Notice Regarding Defendants' Motion to Suppress (Doc. 601))."  (Suppression Order (Doc. No. 601) at 31; Amended Suppression Order (Doc. No. 622) at 31.)

On October 11, 2013, while the suppression order was pending, the United States filed a Motion for Order Requiring Defense Counsel to Return to [the Classified Information Security Officer (CISO)] Certain Produced Items.  (See Doc. No. 474.)  According to the motion, the Government had mistakenly provided certain materials in unclassified discovery to defense counsel that contained classified information.  This request was made in part because defense counsel had not yet received a security clearance and was not authorized to have the classified material.  The court granted the motion.

Counsel for Mr. Thaler cooperated with the Government and returned the requested documents, but Mr. Lustyik objected to the request, arguing that "the documents in question are not confidential/classified" and requested a hearing on the matter.  (Objection to Mot. Requiring Defense Counsel to Return to CISO Certain Produced Items (Doc. No. 488) at 1.)  Nowhere in his objection did Mr. Lustyik inform the Government or the court that the documents or copies of the documents to be returned contained any work product.  After a November 20, 2013 Order (Doc. No. 517) threatening counsel for Mr. Lustyik with contempt for failure to return the documents, counsel for Mr. Lustyik (who was monetarily sanctioned)[1] finally acquiesced and

---

[1]See Dec. 4, 2013 Minute Entry (Doc. No. 542).

4

returned the documents to the CISO.

The court held a status conference on November 12, 2013, and determined that setting a trial date at that time was premature because the Government's production of classified discovery was ongoing.  (See Doc. No. 506.)  The court struck the trial date and excluded time under the Speedy Trial Act until the court held a CIPA Section 4 hearing.[2]  (The Government had filed its CIPA Section 4 Motion on August 30, 2013.)  The Government anticipated that classified discovery (approximately 10,000 pages) would be produced to cleared counsel.

On November 27, 2013, Mr. Taylor pled guilty to Count 2 of the Indictment and the court ordered his immediate release following the hearing.  Mr. Taylor is currently released, but has yet to be sentenced.

On January 31, 2014, in anticipation of the court's upcoming decision on the United States's August 30, 2013 CIPA Section 4 motion, the court scheduled deadlines for CIPA Section 5 and Section 6 filings.[3]  The Defendants were ordered to provide their Section 5 written notice of anticipated disclosures of classified information in pre-trial or trial proceedings no later than April 30, 2014, and the United States was directed to file its motion responding to Defendants' Section 5 disclosures no later than June 30, 2014.  A new trial date of September 15, 2014 was set.  (See Feb. 3, 2014 Scheduling Order (Doc. No. 592).)

The court held a telephone status conference on March 27, 2014.  At the status

---

[2]CIPA Section 4 allows the United States to make an ex parte showing that certain classified information should not be produced.  18 U.S.C. app. 3 § 4.

[3]CIPA Section 5 requires defendants who reasonably expect to use classified information in their defense in a pretrial proceeding or at trial to provide notice to the court and the United States about what that information is.  18 U.S.C. app. 3 § 5.  CIPA Section 6 allows a hearing to resolve issues raised by the defendants' Section 5 notice.  18 U.S.C. app. 3 § 6.

conference, the court asked about defense counsel's statement to Magistrate Judge Pead that

there was "no way [they] could be ready" for the September 15, 2014 trial, which had been set

three months earlier).  (Mar. 27, 2014 Hr'g Tr. (Doc. No. 663) at 4.)  Mr. Mansolillo, counsel for

Mr. Lustyik, said it was difficult to review classified materials with his client who was in

custody.  Mr. Mansolillo said he believed that the Defendants would meet the April 30 CIPA

Section 5 disclosure deadline, but would still not be ready for trial.  The court asked Mr.

Mansolillo specifically what would prevent the defense from being ready for trial in September:

| | |
|---|---|
| The court: | If, in fact, Mr. Mansolillo, your problem stems from the fact, as I understand it, that there [are] logistical problems with Mr. Lustyik viewing the classified information that now is on a disk, that which Mr. Lustyik can see, but you believe that you can meet your April 30th Section 5 disclosure, that encompasses all the classified information. So then what would be the problem for May, June, July, August getting ready for trial if your April 30th information was -- if you had seen it all, what would slow you down? |
| Mr. Mansolillo: | Your Honor, just the logistics, and I don't mean to change the wheel, but every time that we have to go somewhere, we have to file an order, wait for that order to come back -- and I mean we have dozens of witnesses to interview.  We have one, maybe two witnesses in other countries. |
| The court: | You mean because you're CJA, you think that because you have to seek permission to -- |
| Mr. Mansolillo: | I'm just saying it slows things down, Your Honor.  And even with a blanket order, and I have discussed that with Judge Pead, he said that would be fine, I think, one, neither myself -- and I don't want to speak for Mr. Calabro, but my investigators haven't gotten to the regular discovery yet. We got that on a rolling basis.  It took a long time for the government to give it to -- to have given it to us, and we need some time.  There's over a million documents to date, Your Honor, and we need to look at those documents.  We haven't completed it.  And I don't think that the September |

|  | time is going to be adequate.  After consideration, I actually don't think, unless we go from 9:00 to 5:00 every day, I don't think the four weeks is going to be sufficient as well. |
|---|---|
| The court: | I think it is because I think that we'll make sure that it is. |
| Mr. Harbach: | Your Honor, this is David Harbach.  The government confesses a little confusion as to the basis for Mr. Mansolillo's request.  It seems that in the span of today's call, we've heard a complaint about the difficulty in reviewing classified material on the one hand and yet on the other hand a position or a view that April 30th is a likely date by which he can complete the defendants' Section 5 submissions.  And when Your Honor asked him just a moment ago what would be the problem with getting ready for trial if he could have all the classified information taken care of by April 30th or thereabouts, now we hear that there isn't enough time left in the nearly six months that remain before trial for the defense to review the unclassified discovery.  And so -- |
| The court: | Government, when was that given to Mr. Mansolillo and Mr. Calabro? |
| Ms. Blaylock: | Your Honor, all the approximately -- <u>I think it was 11 documents which were provided a few weeks ago, the rest that was provided got to them the first week of July 2013, so over six months ago.</u> |

(<u>Id.</u> at 10-12) (emphasis added).)  Mr. Harbach also notified the court that the court in the SDNY case had postponed its September 8, 2014 trial date to accommodate the trial date in this case.

During the status conference, the court asked Mr. Mansolillo how it was that he could have his Section 5 notice ready on April 30, 2014, but not be ready for the trial four-and-a-half months later.  The court stated, "You have reviewed and will be ready to do your Section 5 on April 30th, as I understand it, but you say that in May, June, July, August, those four and a half months, you can't get the rest of your work done; is that correct?"  (<u>Id.</u> at 13.)  And Mr.

Mansolillo replied, "I think we're going to be cutting it close.  I really do."  (Id. at 13-14.)  Mr. Mansolillo emphasized that preparing for trial would be easier if Mr. Lustyik was released because his confinement made reviewing the classified materials extremely difficult.  In response, the court directed Mr. Mansolillo to prepare and submit a motion to review conditions of confinement that specifically addressed how Mr. Lustyik's release would allow the defense to meet the September 2014 trial date.

After the March 27, 2014 status conference, the court issued an order that reset the trial for September 29, 2014, in order to give defense counsel "some [added] cushion to the trial preparation time."  (Order Excluding Time under the Speedy Trial Act and Rescheduling Trial Date (Doc. No. 622) at 2.)

Mr. Lustyik filed his motion to review the conditions of his confinement and release on April 4, 2014.  In the motion, Mr. Lustyik alleged that, "[u]nder current circumstances counsel for the defendant is certain the trial date currently scheduled will not be met primarily in part to counsel's inability to communicate with his client about matters, which are necessary to his defense."  (Def.'s Mot. to Review the Conditions of Confinement (Doc. No. 623) at 2.)  The motion also laid out nine specific reasons why Mr. Lustyik's release would expedite the defense's trial preparation, and repeatedly indicated how the release was necessary to allow the Defendants to be ready for the September 2014 trial date.  (See id. at 5-7) ("With Mr. Lustyik available and readily accessible to counsel and defense investigators it would significantly reduce preparation time for trial not to mention costs;" "Having Mr. Lustyik available and accessible in a timely fashion is not only necessary to properly prepare for trial but absolutely necessary if this court reasonably expects defense to be able to properly defend client and to proceed with trial on

September 29, 2014;" and "Without the necessary accommodations this trial will not be ready to proceed by September 29, 2014.")  Magistrate Judge Pead granted Mr. Lustyik's motion on May 7, 2014, Mr. Lustyik was released with conditions on May 13, 2014, and transported to the Southern District of New York.

In early to mid-April 2014, the events that precipitated the problem now before the court occurred.  The Government sent two letters to the Defendants stating that a small universe of classified information was recently identified in certain unclassified discovery productions (Productions 2, 5, 6, and 9) (the productions were labeled non-classified due to Government oversight) and that the Defendants were required under CIPA to return those productions to the Government.  The Government said it would redact a limited amount of information in those four productions and then return the redacted versions of Productions 2, 5, 6, and 9 to the Defendants.  The unredacted classified material (i.e., the original Productions 2, 5, 6, and 9) would be placed in the Washington, D.C. SCIF (Sensitive Compartmented Information Facility) for the Defendants to review.  The Government's request was reiterated in May filings and letters.

In response to the two April letters, on April 24, 2014, the Defendants filed a motion in which they seized upon the Government's mistake and asked the court to continue the April 30, 2014 deadline[4] for their Section 5 notice under CIPA and stay all proceedings, or, in the alternative, dismiss the case with prejudice and award attorneys' fees costs related to their

---

[4]Although the Defendants' Section 5 notice was ultimately filed on June 6, 2014, the court notes that the notice was dated and certified on April 30, 2014, the original Section 5 notice deadline that the Defendants claimed they could not meet.

motion.

Upon review of the Defendants' motion for a continuance of the Defendants' CIPA Section 5 notice date, the court suspended the April 30, 2014 deadline, and ordered the Government to quantify the scope of the additional classified information and file an expedited response.

The expedited briefing schedule required the Defendants to file their reply in support of their motion on May 9, 2014. On May 5, 2014, the Defendants asked for an extension to review the Government's filing. The court denied the requested extension because the Government's response provided the Defendants with the information they needed to reply. But the Defendants did not file a reply.

Instead, the Defendants filed a motion on May 19, 2014, asking the court to enjoin the Government from "compelling" the Defendants to return certain document productions and discovery logs to the CISO. In the second motion, the Defendants argued again that the materials that they had been asked to return to the Government were not classified and contained no classified information, and they complained that the materials would be removed from the SCIF altogether so that the Defendants would have "no opportunity to review the documents in their original state." (Joint Mot. to Enjoin Government from Requesting the Return of Discovery (Doc. No. 667) at 3.) Nowhere in either of those motions did the Defendants claim that returning the documents would deprive them of any work product. The court denied Defendants' motion and Defense counsel returned the productions on May 29, 2014.

On June 4, 2014, the Defendants filed their motion to continue the current trial date. For the first time, in that motion, Defendants made the argument that when they obeyed the court's

order and returned the classified information, their word product was destroyed.

## ANALYSIS

In their motion, the Defendants contend that they were forced to delete all of their discovery work product when they were ordered to return Productions 2, 5, 6, and 9, and now they need a year[5] to re-review over a million documents.  The Defendants place all the blame for their predicament on the Government.  "This is of ***no fault of the defendants***.  The only party responsible for this delay is the government and forcing the defendants to proceed to trial on September 29, 2014 will be extremely prejudicial to defendants and cause them irreparable harm."  (See Doc. No. 687 at 7 (emphasis in original).)

In its opposition, the Government responds that the choice to destroy their work product was a choice Defendants made voluntarily without raising the issue with the Government, the CISO, or the court.  (See id. at 2-3.)  The Government argues that Defendants failed to exercise any diligence or effort to maintain their work product, and that by apparently destroying their own work product, the Defendants created their "expressed need" for a further delay in this case.  (See id. at 6.)  The Government observes that the Defendants waited until after the court's May 20, 2014 order to provide details about how the return of the production sets would impact their trial readiness.  (See id.)  And the Government notes that there was no instruction from the Government or court to destroy their work product. (See Doc. No. 687 at 3; Doc. No. 668 at 5.)  Finally, the Government argues that Defendants do not meet the legal standard for granting a continuance based on the facts before the court.  (See Doc. No. 687 at 5-11.)

---

[5]In their Reply, the Defendants quietly suggest, with no reason stated, that perhaps the continuance would only need to be six months.  But their original motion contemplates one year.

The court, applying the appropriate legal standard, agrees with the Government. Moreover, taking Defendants at their word about the destruction of work product, the court nevertheless finds their claim difficult to believe, simply because such a foolhardy move by two licensed attorneys is stunning and because Defendants' counsel failed to notify anyone of the potential destruction of work product.

When determining whether to grant a continuance request, the courts generally consider four factors: "(1) the diligence of the party requesting the continuance; (2) the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; (3) the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; (4) the need asserted for the continuance and the harm that [the defendant] might suffer as a result of the district court's denial of the continuance." United States v. Diaz, 189 F.3d 1239, 1247 (10th Cir. 1999) (quoting United States v. Wynne, 993 F.3d 760, 767 (10th Cir. 1993); United States v. West, 828 F.2d 1468, 1469 (10th Cir. 1987)).  These factors have been referred to as the "Diaz factors" or the "Wynne factors."  "No single factor is determinative and the weight given to any one may vary depending on the extent of the [defendant's] showing on the others." West, 828 F.2d at 1470.  Ultimately, the court's decision, taking into account the Diaz factors, must be based on the individual circumstances of the case.

    1.    <u>Diligence of the Defendants</u>

This problem could have been prevented by the Defendants.  Their filing of the motion to continue was the first time the Defendants raised the work product issue with the court and the Government.  Until now, the Defendants did not provide any description of their method for reviewing documents.  Nor did they object when ordered to return the documents.  Because of

their silence, it is too late to implement any method of return that would have avoided the

problem facing the parties and the court now.  They had ample opportunity to raise the issue on a

timely basis.  They could have raised this issue in their April 24, 2014 motion filed with the

Classified Information Security Officer (CISO) (nor did they use the opportunity to raise these

issues in a reply).  They could have raised the issue in their May 19, 2014 motion to enjoin the

Government from requiring the Defendants to return Productions 2, 5, 6, and 9.  (See Doc. No.

667.)  Instead, they inexplicably waited in silence.[6]  Defendants do not take responsibility for

their litigation choices.  Instead, they argue that they were "prohibit[ed]" from raising these

issues earlier because the court did not hold a hearing on their motion to continue the deadline

for filing their CIPA Section 5 notice.  (See Doc. No. 695 at 2-3.)  No hearing was needed to

raise the issue.

---

[6]In their Reply, they even suggest that, as far back as August 6, 2013, the CISO
indiscriminately told them to destroy their documents, which, according to Defendants, included
work product.  (See Ex. 1 to Defs.' Reply in Supp. of Mot. Continue (Doc. No. 695).)  That
request occurred ten months ago.  The Defendants did not voice any concerns about their work
product to the court when the Government made that particular return request, and the court
heard no complaints until June 20, 2014, when the Defendants filed the email as an exhibit to
their Reply.  Moreover, the email does not support the proposition for which they cite it —
mainly that they have been required to delete their work product.  The email says that the Defendants
must turn over classified documents, which the CISO said he would keep "for short
term storage."  (Id.)  The CISO then said he would "make arrangements to get them back to you
either by providing them in the secure area set up for you in Salt Lake or I can hold them here in
our DC office if you would prefer to review them here."  (Id.)  This says nothing about
destroying work product.  In fact, it provides a way to retain any notations the Defendants may
have made.  Although the email asks that "if [the recalled documents] have been uploaded to a
work computer or server, ... they be deleted from their systems."  (Id.)  Nothing in this email
suggests that the Defendants were required to delete their work product.  And even if the
Defendants read it that way, they did not raise the issue with anyone until now, three months
before trial, after Mr. Lustyik was released on bond (not only to avoid due process concerns but
also to facilitate faster preparation for the September 29, 2014 trial date).

Although they point fingers at the Government, the Defendants' actions, as the Government notes, "exponentially exacerbated" the effect of the Government's "clawback"[7] requirement.  (Gov't's Response to Mot. Continue (Doc. No. 687) at 6.)  Despite the Defendants' protestations to the contrary, the Government did not tell them to destroy the documents, much less their work product.  (See id. at 2.)  Nor did the court order the Defendants to destroy any copies of the productions.  On May 20, 2014, the court ordered the Defendants to "return the original versions . . . including all copies, digital or otherwise, to the CISO by May 30, 2014." (Doc. No. 668 at 5 (emphasis added).)

As the Government notes, there was at least one way to preserve work product:

> [M]ake an exact copy onto a removable hard drive (such as those on which the Government produced discovery to defendants), provide this exact copy to the CISO, and *then* destroy the copy on the hard drive.  This simple protocol would have preserved their work product while allowing them to be in fulls compliance with the court's order.

(Gov't's Response to Mot. to Continue (Doc. No. 687) at 7 (emphasis in original).)  And, again, as the Government aptly notes,

> Defendants fail to explain why they did not file a motion with the Court seeking clarification of the court's order, or seeking some other relief short of destroying their work product.  Had defendants met and conferred with the Government or merely done as ordered by the Court and returned all the copies — including those copies with work product — to the CISO, a solution could have been crafted to remove the classified documents from the copies of the productions.  For example, the CISO could have been provided with a list of affected bates numbers and he could have then removed the classified documents and returned the copies to the defendants.  Alternatively, defendants could have created a list of bates numbers of the important documents they had identified, so they would not be forced to re-review those once they had received the clean production from the

---

[7]Apparently the parties use this term to describe the agency's action to recall classified information that has inadvertently been disclosed.

Government.

(Id. (emphasis added).)  Instead of taking preventive action, they in essence created the problem now facing the court.

The court finds that the diligence factor weighs heavily against the Defendants because in effect they did not exercise any diligence.

2.     Purpose and Need for Continuance

The Defendants provide a blanket assertion that all of their work product has been destroyed and that they must, in essence, start anew.  The Defendants' conclusory pleadings notwithstanding, the court finds that the clawback has had very little to do with their asserted inability to prepare for trial.

Based on a review of their arguments and representations to the court, and using their own calculation method, the court finds that recreating the lost work product should not take Defendants beyond September 29, 2014.  In their motion, Defendants provide the court with a method for estimating the amount of time it would take the defense team of four reviewers to re-review the four production sets that were reproduced to them on May 27, 2014.  (See Doc. No. 679 at 6-7.)  They estimate that while the initial review processed only 60 pages an hour, a secondary review would be slightly faster than the initial one, and that each reviewer could process 100 pages an hour, or 3,200 pages a day.  (See id.)  Based on this rate, and working off a page total of 1,075,800,  Defendants estimate it would take them 336 calendar days to recreate their work product with the four production sets.  (Id.)

Defendants were provided with unclassified Production Sets 2, 5, 6, and 9 on a rolling basis starting on December 19, 2012, and concluding on June 29, 2013.  (See Doc. No. 694 at 2-

3.)  There were 1,074,249 pages[8] in these four production sets, which means that the Defendants had the bulk of the Government's unclassified discovery more than a year before they returned the discovery to the CISO on May 29, 2014.  (See Doc. No. 678, Ex. 1.)

Nevertheless, Mr. Mansolillo, counsel for Mr. Lustyik, told the court on March 27, 2014, that neither he nor his investigator had started reviewing the unclassified information in this case.  (See Mar. 27, 2014 Hr'g Tr. (Doc. No. 663) at 10-12.) And yet Defendants now claim that they deleted so much work product on or before May 29, 2014, that they cannot be ready for the September 29, 2014 trial date.  Defendants argue that they have to review all of the pages in the four production sets again, implying that they completed a full review once.  (See Doc. No. 679 at 7.)  The Defendants' claim cannot be reconciled with the record before the court.

Even if the Defendants started reviewing unclassified documents on March 28, 2014 (the day after Mr. Mansolillo represented no work had been started), and continued with four reviewers working eight hours a day until May 28, 2014 (the day before the Defendants returned the production sets to the CISO), at most Defendants would only have been able to review 1,920 pages a day, and create work product for a total of 119,040 pages, which is a significantly smaller number than the "1,075,800 pages of discovery" that, Defendants claim in their motion, require a new review before trial.[9]  (See id. at 7.)

If the number of unclassified documents reviewed by Defendants is 119,040, then, at

---

[8]The Government reproduced two production sets on September 4, 2013, and made a small production of 454 new documents on March 19, 2014.  (See Doc. No. 694 at 3.)

[9]It may well be the case that the defense team needs to process almost all of the Government's unclassified discovery before trial. But the fact that so much remains to be done is not the court's problem.

most—based on the Defendants' representation that they could review these documents at a faster rate of 100 pages an hour for the reproduced sets—the same four reviewers could review 3,200 pages a day.  At that clip, Defendants could review the 119,040 documents in about 37 days, a far cry from the 336 days Defendants calculated.

As the Government notes, however, Defendants fail to describe how many documents they had actually reviewed, and the scope of their associated work product, before returning the production sets to the CISO on May 29, 2014.  (See Doc. No. 687 at 8.)  "If they had reviewed all or most of the documents by the time of the clawback, going forward they should be able to use targeted searches to isolate documents to prepare for trial, or at the very least, be able to quickly re-review these documents, as they are now familiar to counsel.  If they had not reviewed most of the documents at the time of the clawback, then the clawback itself has had little to no effect on defendants' ability to prepare for trial."  (Doc. No. 694 at 1-2 n.1.)

The Defendants have not shown any need that was not created by their own failure to protect their work product.  The attorney has the responsibility to timely and diligently review discovery and to protect his work product.  Counsel for the Defendants did not live up to their obligations. The fact that so much work remains to be done is the fault of the Defendants, not the court and not the Government.[10]

For the foregoing reasons, this factor weighs against the Defendants.

---

[10]That is not to say that the Government is not to blame for at least some of the delay. The discovery process with classified and unclassified documents has been complicated and difficult, and the requests for clawbacks of information and document sets has been expensive and time-consuming.  Nevertheless, the problems caused by the clawbacks pale in comparison to the unforced actions and lack of diligence of the Defendants.

3.    <u>Inconvenience to Government, Witnesses, and Court</u>

This case was indicted in October 2012.  Trial was originally set to begin in November

2013.  This case has been continued numerous times to assist both sides in their trial preparation.

All that time, the Government has been diligently preparing for trial.  Government

attorneys have provided a thorough set of discovery, provided a draft exhibit list to the

Defendants, and interviewed a significant number of witnesses.  But, importantly, as the

Government notes,

> Witnesses' memories fade over time, particularly since the relevant events
> occurred several months before this case was indicted — in other words, more
> than two years ago.  Although the Government recorded most of the interviews of
> its witnesses, at the end of the day, the jury will hear what the witnesses remember
> on the day they testify, not what they told the investigators two years prior.
> Further delays hamper the Government's right to a fair trial in this matter.

(Doc. No. 687 at 8.)

The public has an interest in a speedy trial.  The charges against the Defendants are

serious and the clock continues to tick away as the Defendants remain on pretrial release.  Now

the Defendants ask the public to wait even longer because they either made a drastic mistake or

failed to do their jobs during the many months they left documents unreviewed.

A continuance would cause significant problems not only for this court but for the New

York court in the SDNY case.  This court has blocked out four weeks for trial.  Finding another

block of four weeks in the parties' and the court's schedules would be a very difficult task,

further complicated by the fact that the district court in New York has a trial scheduled for

November 17, 2014.  If the New York trial goes forward, counsel for Defendants (at least

counsel for Mr. Lustyik, who represents Mr. Lustyik in both matters) will not be available for

trial here or able to prepare for trial in this matter during the time they are working on the trial in the SDNY case.

Setting aside for the moment the six to twelve months the Defendants seek, given the court's scheduling difficulties and conflicts, if a continuance is granted, the case could languish and roll over into mid- to late-2015.  The inconvenience to the Government, the witnesses, and the courts is great.  Accordingly, this factor weighs heavily against the Defendants.

4.    <u>Need Asserted and the Possible Harm</u>

The court finds it difficult to reconcile the nature of this case with the Defendants' extraordinary request to continue so they can re-review one million documents page by page. The basis for the Government's case is actually quite straightforward.  The Indictment charges the Defendants with engaging in a scheme to bribe Defendant Robert Lustyik, who during the relevant time period was a Special Agent for the Federal Bureau of Investigation ("FBI"), in exchange for official acts aimed at persuading federal law enforcement agents and federal prosecutors to drop an investigation into Mr. Taylor that ultimately resulted in Mr. Taylor's indictment in <u>United States v. David Young, et al.</u>, 2:12-cr-502 (D. Utah).

The Government represents that it has no intention of using much, if any, classified information at trial to prove its case against the Defendants.  (<u>See, e.g.,</u> Sealed Doc. No. 693.) Certainly the Defendants are free to challenge the Government's case with relevant and otherwise admissible (and potentially, classified) evidence.  But, ultimately, at most they must meet the Government's evidence, not put on their own case to prove innocence.  They already have the Government's draft exhibit list and know the charges (and elements) that the Government must prove beyond a reasonable doubt.  Forming and presenting a defense should be relatively

19

straightforward.

Defendants' counsel should be very familiar with this case.  The same counsel who filed the motion to continue have been working on the case since at least the time of indictment.  The bulk of discovery was produced by the Government between December 5, 2012, and June 29, 2013.  Of that total, only 326 new pages were produced on March 19, 2014.  (See Doc. No. 694 at 2-3.)  The Defendants represented that they had formed certain defense theories.  The Government gave them detailed production logs and a draft exhibit list (the court suggested, and the Government agreed to provide, a draft exhibit list to streamline the Defendants' preparation for the September 29, 2014 trial).  The documents at issue are not new, but rather re-productions of documents the Defendants have had for months.  Yet now they say they must start over because they deleted all of their work product.

Any harm to the Defendants was caused by their attorneys. And, as noted above, the need and harm have been overstated by the Defendants.

Trial is still three months away.  The Defendants have had the bulk of non-classified discovery (and the opportunity and wherewithal to review it) for over a year.  They have had the vast majority of classified discovery since January 2014.  Moreover, the nature of the case (and the likely evidence) is not as complex as Defendants suggest, and the court finds that the Defendants' counsels' characterization of the scope of their job to defend is exaggerated.

At some point, the Defendants must take responsibility for their own failures, and they cannot "bootstrap" those failures to argue prejudice.  To do so would be inequitable and create an undesirable precedent.

For all these reasons, the court finds that the final factor weighs against the Defendants as

well.

**Conclusion**

The Defendants created a preventable problem which they cannot in good faith lay at the feet of the Government or the court.  For the reasons set forth above, the court concludes that the Defendants' situation does not warrant a continuance of the September 29, 2014 trial date.  The Defendants' expressed need for a continuance is not a need that, when balanced against the interest in a speedy trial held by the Government, public, court and the Defendants, justifies a continuance, especially a continuance as extreme as the Defendants suggest.

**ORDER**

Defendants Johannes Thaler and Robert Lustyik's Joint Motion to Continue Trial Date (Doc. No. 679), as noted earlier in the court's June 23, 2014 Order (Doc. No. 696), is DENIED.

The court appreciates the Government's efforts to prepare a re-production of the May 27, 2014 production without suppressed documents.  In the interest of time, resources, and Defendants' rights, as well as to avoid another clawback, the court will not order the Government to reproduce the May 27, 2014 production without the suppressed documents.  Defendants may keep the entirety of the May 27, 2014 production, which includes approximately 731,236 suppressed documents.  This option is possible because Agency 1 and Agency 2 represented that they would not require a classification review of the suppressed documents as long as Defendants and the court received the appropriate notice and admonition about the possibility of classified information in the suppressed documents.  To that end, the Government must send the letter requested by Agency 2 to Defendants and the court "stating that defendants are on notice of the subject matter of certain classified information because of portion markings on the reproductions

of documents involving Agency 2's equities and the admonishment provided by Agency 2 . . . ."

(Doc. No. 687 at 4.)

SO ORDERED this 30th day of June, 2014.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge