| | | |
|---|---|---|
| JACK SMITH, Chief | JAIKUMAR RAMASWAMY, Chief | CARLIE CHRISTENSEN, Acting U.S.A. (#633) |
| Peter M. Koski, Deputy Chief | Ann Marie Blaylock Bacon, Trial Atty | Karin Fojtik, A.U.S.A. (# 7527) |
| Maria N. Lerner, Trial Attorney | U.S. Department of Justice | U.S. Attorney's Office, District of Utah |
| U.S. Department of Justice | Criminal Division, Asset Forfeiture and | 185 South State Street, Suite 300 |
| Criminal Division, Public Integrity Section | Money Laundering Section | Salt Lake City, Utah 84111-1506 |
| 1400 New York Ave. NW, 12th Floor | 1400 New York Ave. NW, 10th Floor | Telephone: 801.524.5682 |
| Washington, D.C. 20530 | Washington, D.C. 20530 | Facsimile: 801.524.6924 |
| Telephone: 202.514.1412 | Telephone: 202.514.1263 | |

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:12-cr-645 (TC) (DBP) |
| Plaintiff, | |
| v. | **GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE PUBLIC AUTHORITY DEFENSE** |
| ROBERT G. LUSTYIK, JR. and JOHANNES W. THALER, | |
| Defendants. | Judge Tena Campbell |

The United States, by and through undersigned counsel, respectfully moves this Court *in limine* to preclude defendants from raising a public authority defense.

### INTRODUCTION

Defendants Robert G. Lustyik, Jr. ("Lustyik"), Michael L. Taylor ("Taylor"), and Johannes W. Thaler ("Thaler") are charged in the Indictment with engaging in a scheme to bribe Lustyik, who during the relevant time period was a Special Agent for the Federal Bureau of Investigation ("FBI"), in exchange for official acts aimed at persuading federal law enforcement agents and federal prosecutors to drop an investigation into Taylor that ultimately resulted in Taylor's indictment in *United States v. David Young, et al.*, 2:12-CR-502. (*See* Doc. No. 39.) Trial in this matter is scheduled for September 29, 2014. (*See* Doc. No. 622.)

On May 22, 2014, the Government filed a Motion to Preclude Public Authority Defense, or In the Alternative, to Compel Disclosure Pursuant to Federal Rule of Criminal Procedure 12.3(a)(1). (*See* Doc. No. 670.) The Government filed this motion in light of the following facts: (1) the deadline for filing pretrial motions (other than motions to suppress) was October 1, 2013 (*See* Doc. No. 256 at 2.); (2) the Government had, on eight occasions dating from December 5, 2012, to March 18, 2014, requested that defendants provide notice of their intent to assert a public authority defense, but had (at the time of the filing of its motion) received no such notice (*See* Doc. No. 670 at ¶¶ 2-3.); and (3) defendants had failed to demonstrate good cause for having failed to provide notice within the time allotted for pretrial motions or for having failed to respond to the Government's requests.

On May 29, 2014, defendants Thaler and Lustyik filed a joint response to the Government's motion. (*See* Doc. No. 677.) In this response, defendants again failed to provide notice of their intent to assert a public authority defense, instead incorrectly asserting that the Court had not yet set a deadline for such filings and, as such, that "responses are not untimely, nor is the government prejudiced in any manner." (*See* Doc. No. 677 at ¶ 2.)

On July 16, 2014, this Court scheduled a hearing on all pending motions to be held on August 14, 2014. (Doc. No. 725.) One day before that hearing, on August 13, 2014, defendants Thaler and Lustyik submitted what purports to be a Joint Notice of Public Authority Defense. The sum total of the information contained in that document is limited to three paragraphs asserting the following: (1) the agencies involved were the FBI, the Drug Enforcement Agency ("DEA"), and a third agency; (2) the members of the agencies involved "include" FBI Special Agents Scott Olson, Peter Orphanos, "and other supervisors"; and (3) "Defendants were acting under this public authority during the time of the allegations in the indictment of this case."

Moreover, the notice closes by stating "[t]he above list may not be all inclusive should the Defendants learn of additional agencies or individuals that were involved."[1]

In light of this filing, at the hearing on August 14, 2014, the Court orally denied as moot the Government's public authority motion. In so doing, the Court did not reach the merits of the Government's previous arguments as to defendants' notice being untimely or address the sufficiency of defendants' notice. Accordingly, the Government now moves *in limine* to preclude Lustyik and Thaler from presenting witness testimony regarding their alleged public authority defense because they did not file timely notice and cannot show that they had a good faith basis for failing to comply with Rule 12.3(a). FED. R. CRIM. P. 12.3.

## DISCUSSION

The public authority defense is an affirmative defense that "requires a defendant to show that he was engaged by a government official to participate in a covert activity." *United States v. Apperson*, 441 F.3d 1162, 1204 (10th Cir. 2006) (internal quotation marks omitted). "And when the government official engages a defendant to participate in a violation of federal law, that official must actually have the authority to empower such a violation." *United States v. Granados*, 501 F. App'x 820, 823 (10th Cir. 2012) (noting that it is still an open question whether apparent authority would be sufficient, but that the circuits to address this question have concluded it is not).

The public authority defense is one of only three affirmative defenses (along with alibi and insanity) for which the Federal Rules of Criminal Procedure impose on the defense special notice requirements. *See* FED. R. CRIM. P. 12.1-12.3. In relevant part, the special notice provision for the public authority defense provides that "[i]f a defendant intends to assert a

---

[1] This document was not docketed on the public record, but as it is only 2 pages long, all quotations or references to it appear on those two pages.

3

defense of actual or believed exercise of public authority," he must give written notice to the government and the court "within the time provided for filing a pretrial motion, or at any later time the court sets," FED. R. CRIM. P. 12.3(a)(1), and that "[t]he notice must contain the following information:  (A) the law enforcement agency or federal intelligence agency involved; (B) the agency member on whose behalf the defendant claims to have acted; and (C) the time during which the defendant claims to have acted with public authority."  FED. R. CRIM. P. 12.3(a)(2).

Once a defendant files notice under Rule 12.3(a), the government must then file a response "admit[ting] or deny[ing] that the defendant exercised the public authority identified in the defendant's notice" and must do so "within 14 days after receiving the defendant's notice, but no later than 21 days before trial."  FED. R. CRIM. P. 12.3(a)(3).  After receiving the defendant's notice (but no later than 21 days before trial), the government may also request additional information regarding the listed witnesses.  Should the government file such a request, the defendant then has 14 days to respond, after which the government has 14 days to provide reciprocal disclosure for any witness "that [it] intends to rely on to oppose the defendant's public authority defense."  FED. R. CRIM. P. 12(a)(4)(B)-(C).

Although "the court may, for good cause, allow a party additional time to comply with this rule," FED. R. CRIM. P. 12.3(a)(5), for the public authority defense, as for the alibi and insanity defenses, "[i]f a party fails to comply with this rule, the court may exclude the testimony of any undisclosed witness regarding the public-authority defense."  FED. R. CRIM. P. 12.3(c); *see also* FED. R. CRIM. P. 12.1(e), 12.2(d).

Defendants Thaler and Lustyik have now filed notice of their intent to assert the public authority defense; however, the notice is untimely and deficient and the court should preclude

defendants from presenting testimony from any witness to purportedly establish a public authority defense. Although the remedial aspect of Rule 12.3 is discretionary, the requested remedy is appropriate under the circumstances because defendants failed to comply with the Rule 12.3(a) notice requirements and cannot show good cause for this failure.

   I.   <u>Defendants' Notice is Untimely</u>

Pursuant to Rule 12.3(a), defendants were required to provide notice of their intent to assert a public authority defense "within the time provided for filing a pretrial motion, or at any later time the court sets." FED. R. CRIM. P. 12.3(a)(1). Defendants failed to comply with this Rule. Pursuant to this Court's Scheduling Order dated May 6, 2013, "[a]ll other motions (other than motions to suppress) [we]re due" on October 1, 2013. (*See* Doc. No. 256 at ¶ 2.) Although the trial date set in that Order was ultimately moved, this deadline was not extended. Nothing in the Court's rulings between May 6, 2013, and October 1, 2013, amended the date by which these motions were to be filed or set an alternate schedule for the submission of Rule 12.3(a) notice. Furthermore, at the point when this deadline was set, the Government had made eight previous requests that defendants provide the required notice. (*See* Doc. No. 670 at ¶ 2.) Accordingly, defendants have failed to comply with the Rule 12.3(a) notice requirement.

Defendants have also not shown good cause for their failure to comply with Rule 12.3(a). Defendants did not request that the Court grant them additional time to comply with their Rule 12.3(a) obligation or in any way provide the Court or the Government with an explanation for untimely notice. Moreover, defendants cannot now show that there was good cause for their untimely notice because: (1) defendants have known all of the facts to be disclosed since the inception of the case; (2) there is no permissible strategic justification; and (3) the Government promptly and repeatedly requested disclosure.

First, defendants cannot show that the relevant information is newly discovered.  Indeed, the public authority defense is an affirmative defense that—by its very nature—presupposes knowledge of the fact or set of facts that constitute the defense at the time the offense was committed.  Although multiple defenses fall within the "public authority defense" umbrella, each requires that the defendant admit that the conduct occurred, but claim innocence based on a government official's imprimatur of legality.[2]  To make such a claim, a defendant must necessarily know the facts subject to disclosure under Rule 12.3(a)(2) at the time they are committing the act.  *See Apperson*, 441 F.3d at 1205-06 ("[T]here must be an active misleading by a government agent, and actual reliance by the defendant which is reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.") (citing *United States v. Hardridge*, 379 F.3d 1188, 1192 (10th Cir. 2004)); *see also United States v. Giffen*, 473 F.3d 30, 39 (2d Cir. 2006) ("Whether a defendant was given governmental authorization to do otherwise illegal acts through some dialogue with government officials necessarily depends, at least in part, on precisely what was said in the exchange."). Accordingly, because defendants must necessarily have known of the facts to be disclosed since the case began, they cannot now show good cause for their failure to comply with Rule 12.3(a). *See United States v. Pearson*, 159 F.3d 480, 483 (10th Cir. 1998) ("As the very nature of [the defendant's] alleged alibi confirms that he and his mother would have known of it long before

---

[2] *See, e.g., United States v. Baptista-Rodriquez*, 17 F.3d 1354, n.18 (11th Cir. 1994) (Describing the three related defenses:  "First, the defendant may allege that he lacked criminal intent because he honestly believed he was performing the otherwise-criminal acts in cooperation with the government"; "[a] second possible defense is 'public authority.' With this affirmative defense, the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in a covert activity"; and "[a] third possible defense in cases like the present one is 'entrapment by estoppel.' This defense applies when a government official tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime in reasonable reliance on the official's representation.").

the deadline for submitting his alibi defense, he cannot show good cause, as required by Fed. R. Crim. P. 12.1(e), for failure to comply with Rule 12.1(a)."). The fact that defendants' notice contains the caveat that "[t]he above list may not be all inclusive should the Defendants learn of additional agencies or individuals that were involved" demonstrates that either defendants do not understand the nature of a public authority defense, or have facially failed to comply with the requirements of Rule 12.3.

Second, the failure to comply with Rule 12.3 cannot be justified as a permissible strategic decision. Rule 12.3, like its counterparts, requires that notice be timely, but in no way "requires the defendant to rely on [that defense] or prevents him from abandoning the defense; these matters are left to his unfettered choice." *See Williams v. Florida*, 399 U.S. 78, 84 (1970); *see also* FED. R. CRIM. P. 12.3(e) ("Evidence of an intention as to which notice was given under Rule 12.3(a), later withdrawn, is not, in any civil or criminal proceeding, admissible against the person who gave notice of the intention."). As such, defendants cannot claim that they had delayed providing notice because they had not decided whether they intended to assert the defense or they were concerned with the possible consequences. Timely Rule 12.3 notice is a requirement, not an option.

Finally, defendants failed to comply with the deadlines set in the Court's Scheduling Order and failed to respond to numerous Government requests and demands for disclosure dating from December 5, 2012, to May 22, 2014. Instead, defendants waited to give notice until August 13, 2014, the day before the Court was set to rule on the Government's motion on this topic, and a mere 6 weeks before the scheduled trial date. The fact that defendants initially filed a response to the Government's motion arguing that the Court had not set a deadline for notice to be filed, only to then file notice on the eve of the Court's motions hearing, makes clear that this was a

tactical choice. The special notice provisions of the Federal Rules of Criminal Procedure were enacted to combat precisely this type of gamesmanship and the delay that it engenders. *See* FED. R. CRIM. P. 12.3, 1986 Advisory Committee Note ("The rationale of both [the alibi and insanity] rules—*i.e.*, notice is needed to avoid unfair surprise and to permit adequate preparation—also supports Rule 12.3."); *see also Williams*, 399 U.S. at 80-86 (noting that the alibi notice rule "enhance[s] the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence").

### II. Precluding Witness Testimony on the Public Authority Defense is Appropriate

Because defendants cannot show good cause for their failure to comply with the Rule 12.3 notice requirements, and based on the totality of the circumstances described above, it is proper for the Court to preclude defendants from introducing witness testimony regarding the public authority defense. In the alibi-defense context, the Tenth Circuit has upheld district courts' decisions to exclude testimony in cases where the relevant information was known to the defendant, had been requested, and the defendant could not show good cause for providing untimely notice. *See Pearson*, 159 F.3d at 483; *United States v. Davis*, 40 F.3d 1069, 1076 (10th Cir. 1994). Here, the information was known, had been requested on numerous occasions over an 18-month period, and defendants not only cannot show good cause, but by all appearances willfully disregarded the Rule's requirements in an attempt to gain an impermissible strategic advantage. *See Williams*, 399 U.S. at 82 ("The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played."). Accordingly, defendants should be precluded from presenting a public authority defense. *See Taylor v. Illinois*, 484 U.S. 400, 415 (1984) (compulsory process clause of sixth amendment does not bar preclusion of testimony of defense witness as sanction for

violating discovery rule if discovery violations are found to be "willful and motivated by a desire to obtain a tactical advantage"); *see also United States v. Abacasis*, 785 F. Supp. 1113, 1118 (E.D.N.Y. 1992) (if refusal to comply with Rule 12.3(a) is willful and intended to gain tactical advantage, "the Court may exercise its prerogative under 12.3(c) and exclude the testimony of any undisclosed witness offered in support of the defense").

Preclusion is also appropriate because defendants' late notice is prejudicial to the Government. Pursuant to Rule 12.3(a)(4), the government is entitled to request additional information about any witness listed in the defendant's Rule 12.3(a) notice and to provide reciprocal witness disclosure, if requested. FED. R. CRIM. P. 12.3(a)(4). The government's request for such information, however, must be made "no later than 21 days before trial." *Id.* Here, defendants filed their notice on August 13, 2014, and trial is scheduled for September 29, 2014, leaving the Government with fewer than 30 days in which to determine whether to request additional information and unnaturally shortening the Government's time in which to determine whether there is merit to defendants' claim of reliance on public authority, identify witnesses to rebut such a claim, and reply to defendants request for additional information, should defendants request reciprocal disclosure. Given the nature of the case and of the alleged defense, defendants' untimely notice is prejudicial and could lead to further delays that would have been entirely avoidable had defendants complied with Rule 12.3(a) in the first instance or timely rectified their initial failure.

The prejudicial effect and potential for delays is further exacerbated by the fact that the notice defendants did file is grossly deficient. The deficiencies in defendants' notice include that: (1) it claims that three agencies were involved, but only names two individuals, both of whom are employed by the FBI; (2) it lists "other supervisors," among the agency members on

whose behalf defendants claim to have been acting, but does not provide actual notice as to who any of these "other supervisors" are or which of the named agencies they work for; (3) it states an overbroad period of time during which defendants claim to have been acting pursuant to these individuals' authority; and (4) and contains the caveat that "[t]he above list may not be all inclusive should the Defendants learn of additional agencies or individuals that were involved." Indeed, as it currently reads, defendants' notice appears to allege that defendant Lustyik, at all relevant times employed by the FBI, was acting under the actual authority of individuals from the DEA and/or the third agency. Attached as Exhibit A is the letter provided to defense counsel seeking clarification of defendants' public authority notice; this letter highlights the gross deficiencies in defendants' notice. The fact that defendants failed to respond to the Government's request for additional information underscores the bad faith defendants have shown in providing this notice, and tactical advantages defendants sought, in this eleventh hour, bare bones notice. The notice is facially deficient, fails to achieve the goals of Rule 12.3 notice, and makes it impracticable for the Government to properly investigate the alleged defense or to even adequately respond to defendants, as required by Rule 12.3(a)(3). All of this, in turn, increases the potential for further avoidable delay.

     Finally, even if defendants were permitted to call the individuals named in their untimely notice, or any other individuals, they would be unable to present any testimony from either witness that would in any way support the notion that defendants undertook the illegal activities described in the Indictment while under either witness' authority. *See Dixon v. United States*, 548 U.S. 1, 5-17 (2006) (defendant bears the burden of proving affirmative defense by preponderance of the evidence). Defendants cannot show that they relied on actual authority: in sworn testimony, both FBI Agent Olson and FBI Agent Orphanos (the only government agents

named in defendants' notice) expressly denied having authorized any of the illegal activities in the Indictment and denied even knowing Thaler. (Olson Trans. at 19; Orphanos Trans. at 30, 116-117.) *See United States v. Wade*, 399 F. App'x 471, 476-77 (11th Cir. 2010) ("district court did not abuse its authority in precluding [defendant's] public authority defense from being presented to the jury" where defendant did not offer any relevant evidence to support the defense). And defendants cannot rely on apparent authority to establish the public authority defense.[3]

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court preclude defendants Thaler and Lustyik from asserting the public authority defense.

---

[3] Although, as noted above, the Tenth Circuit has technically left open the question "whether apparent authority is sufficient for a public-authority defense," *Granados*, 501 F. App'x at 723-24, in *Apperson*, the Court upheld a district court's denial of a public authority instruction in part because "there was no evidence that [the defendant] 'acted on the or the advice of a *duly-authorized* law enforcement official concerning the charges in the Indictment." 441 F.3d at 1205 (emphasis added); *see also United States v. Pickard*, 278 F. Supp. 2d 1217, 1240 (D. Kan. 2003) ("Reliance on the apparent authority of a government official is not a defense . . . ."). This requirement comports with the express holdings of all circuits to have addressed the issue. *See United States v. Holmquist*, 36 F.3d 154, n.6 (1st Cir. 1994) (apparent authority "defense is not a defense at all"); *United States v. Duggan*, 743 F.2d 59, 83 (2d Cir. 1984); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999); *United States v. Fulcher*, 250 F.3d 244, 254 (4th Cir. 2001) ("[W]e adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official to engage him in a covert activity."); *United States v. Sariles*, 645 F.3d 315, 318-19 (5th Cir. 2011) ("[A]ctual authority is a necessary element of the public authority defense."), *cert. denied*, 132 S. Ct. 1855 (2012); *United States v. Burrows*, 36 F.3d 875, 881-82 (9th Cir. 1994); *United States v. Rosenthal*, 793 F.2d 1214, 1236 (11th Cir. 1986), *modified on other grounds*, 801 F.2d 378 (11th Cir.1986). The D.C. Circuit, the Sixth Circuit, and the Eight Circuit have not addressed this question, while the Seventh Circuit, like the Tenth Circuit, has let the question open. *United States v. Stallworth*, 656 F.3d 721, 727 (7th Cir. 2011).

Respectfully submitted,

| | |
|---|---|
| JACK SMITH<br>Chief | JAIKUMAR RAMASWAMY<br>Chief |
| By: */s/ Maria N. Lerner*<br>Peter M. Koski, Deputy Chief<br>Maria N. Lerner, Trial Attorney<br>Public Integrity Section | By: */s/ Ann Marie Blaylock Bacon*<br>Ann Marie Blaylock Bacon, Trial Attorney<br>Asset Forfeiture/Money Laundering Section |