JACK SMITH, Chief
Peter M. Koski, Deputy Chief
Maria N. Lerner, Trial Attorney
U.S. Department of Justice
Criminal Division, Public Integrity Section
1400 New York Ave. NW, 12th Floor
Washington, D.C. 20530

JAIKUMAR RAMASWAMY, Chief
Ann Marie Blaylock Bacon, Trial Atty
U.S. Department of Justice
Criminal Division, Asset Forfeiture and
    Money Laundering Section
1400 New York Ave. NW, 10th Floor
Washington, D.C. 20530

CARLIE CHRISTENSEN, Acting U.S.A. (#633)
Karin Fojtik, A.U.S.A. (# 7527)
U.S. Attorney's Office, District of Utah
185 South State Street, Suite 300
Salt Lake City, Utah 84111-1506
Telephone:  801.524.5682
Facsimile:   801.524.6924

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>ROBERT G. LUSTYIK, JR. and<br>JOHANNES W. THALER,<br><br>            Defendants. | Case No.  2:12-cr-645 (TC) (DBP)<br><br>**GOVERNMENT'S PROPOSED<br>JURY INSTRUCTIONS** |

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the United States, by and through undersigned counsel, respectfully submits the attached proposed jury instructions in this case. Further, the government represents that these are preliminary draft instructions only, and requests leave to offer such modifications and additional instructions as may become appropriate.

A.   The court's standard instructions on the following subjects:

1.   Verdict – Jury's Responsibility.

2.   Province of the Court.

3.   Burden of Proof – Beyond a Reasonable Doubt

4.   Punishment Within the Exclusive Province of the Court.

5.   Evidence Defined.

6.   Direct and Circumstantial Evidence.

7.   Weight of the Evidence.

8.   Credibility of Witnesses.

      9.      Defendant's Silence or Testimony.

     10.    Jury is Sole Judge of the Fact

     11.    Reaching a Verdict.

     12.    Duty to Deliberate

     13.    Selecting a Foreperson.

     14.    Communications with the Court.

B.     In addition to the above, the government requests that the remainder of the

attached instructions also be given by the Court.

Respectfully submitted,

JACK SMITH                        JAIKUMAR RAMASWAMY
Chief                                 Chief

By:   */s/ Maria N. Lerner*         By:   */s/ Ann Marie Blaylock Bacon*
       Peter M. Koski, Deputy Chief         Ann Marie Blaylock Bacon, Trial Attorney
       Maria N. Lerner, Trial Attorney        Asset Forfeiture/Money Laundering Section
       Public Integrity Section

COURT'S STANDARD INSTRUCTION No. 1

**Verdict – Jury's Responsibility**

MEMBERS OF THE JURY:

Now that you have heard the evidence and the arguments, it becomes my duty to instruct you on the law that applies to this case.

It is your duty as jurors to follow the law as stated in the instructions of the court, and to apply the rules of law so given to the facts as you find them from the evidence in the case.

Counsel may refer to these instructions in their arguments.  If, however, any difference appears to you between the law as stated by counsel and that stated by the court in these instructions, you are of course to be governed by the court's instructions.

You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law stated by the court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in these instructions of the court; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in the case.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors; and to arrive at a verdict by applying the same rules of law, as given in the instructions of the court.

COURT'S STANDARD INSTRUCTION No. 2

**Province of the Court**

You have been chosen as jurors in this case to try the issues of fact presented by the allegations of the indictment and the denial made by the "Not Guilty" plea of the defendants. It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You are to perform this duty without bias or prejudice as to any party. You must not be influenced by any personal likes or dislikes, opinions, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case. The defendants and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the court, and reach a just verdict.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. And you must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return -- that is a matter entirely up to you.

COURT'S STANDARD INSTRUCTION No. 3

**Burden of Proof – Beyond a Reasonable Doubt**

The indictment or formal charge against the defendants is not evidence of guilt.  Indeed, the defendants are presumed by the law to be innocent.  The law does not require the defendants to prove their innocence or produce any evidence at all, nor does it compel them in a criminal case to take the witness stand to testify.  The government has the burden of proving the defendants guilty beyond a reasonable doubt, and if it fails to do so you must acquit the defendants.

Thus, while the government's burden of proof is a strict or heavy burden, it is not necessary that the defendants' guilt be proved beyond all possible doubt.  It is only required that the government's proof exclude any "reasonable doubt" concerning the defendants' guilt.  A "reasonable doubt" is a real doubt, based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.  If you are convinced that the defendants have been proved guilty beyond reasonable doubt, find them guilty.  If you are not so convinced, find them not guilty.

COURT'S STANDARD INSTRUCTION No. 4

**Punishment Within the Exclusive Province of the Court**

The punishment provided by law for the offense charged in the indictment is a matter exclusively within the province of the court, and should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused.

COURT'S STANDARD INSTRUCTION No. 5

**Evidence Defined**

The evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them; all exhibits received in evidence, regardless of who may have produced them; and all facts which may have been admitted or stipulated.

Statements and arguments of counsel are not evidence in this case. When, however, the attorneys on both sides stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard that fact as conclusively proved.

Any evidence as to which an objection was sustained by the court, and any evidence ordered stricken by the court, must be entirely disregarded.

Anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

You are to consider only the evidence in this case. However, in your consideration of the evidence, you are not limited to the bald statements of the witnesses. On the contrary, you are permitted to draw from the facts which you find have been proved such reasonable inferences as seem justified in light of your experience. An inference is a deduction or conclusion which reason and common sense would lead you to draw from facts which are established by the evidence in the case.

You should weigh all of the evidence in the case, affording each piece of evidence the weight or significance that you find it reasonably deserves.

If any reference by the court or by the attorneys to matters of evidence does not coincide with your own recollection, it is your recollection which should control during your deliberations.

COURT'S STANDARD INSTRUCTION No. 6

**Direct and Circumstantial Evidence**

You may consider both direct and circumstantial evidence.  "Direct evidence" is the

testimony of one who asserts actual knowledge of a fact, such as an eyewitness.  "Circumstantial

evidence" is proof of a chain of facts and circumstances indicating either the guilt or innocence

of the defendants.  The law makes no distinction between the weight to be given to either direct

or circumstantial evidence.  It requires only that you weigh all of the evidence and be convinced

of the defendants' guilt beyond a reasonable doubt before they can be convicted.

COURT'S STANDARD INSTRUCTION No. 7

**Weight of the Evidence**

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.

After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves.

COURT'S STANDARD INSTRUCTION No. 8

**Credibility of Witnesses**

Now, I have said that you must consider all of the evidence.  This does not mean, however, that you must accept all of the evidence as true or accurate.

I have already indicated that you are the sole judges of the credibility or "believability" of each witness and the weight to be given to their testimony.  In weighing the testimony of the witnesses you should consider their relationship to the government or the defendants; their interest, if any, in the outcome of the case; their manner of testifying; their opportunity to observe or acquire knowledge concerning the facts about which they testified; their candor, fairness and intelligence; and the extent to which they have been supported or contradicted by other credible evidence.  You may, in short, accept or reject the testimony of any witness in whole or in part.

COURT'S STANDARD INSTRUCTION No. 9

**Defendant's Silence**

The law does not compel a defendant in a criminal case to take the witness stand and testify.  No presumption of guilt may be raised, and no inference of any kind may be drawn from the fact that the defendant did not testify.

ALTERNATIVE INSTRUCTION No. 9

**Defendant's Testimony**

You are instructed that the defendant is a competent witness in his own behalf and his testimony should be received and given the same consideration as you give to that of any witness.  The fact that he stands accused of a crime is no evidence of his guilt and no reason for rejecting his testimony.  However, you should weigh his testimony the same as you weigh the testimony of any other witness.

COURT'S STANDARD INSTRUCTION No. 10

**Jury is Sole Judge of the Facts**

If I have said or done anything in this case that makes it appear I have an opinion about

the guilt or innocence of the defendants, disregard it.  You are the sole judges of the facts and

should in no way be influenced by what I have done here except to follow my instructions on the

law.  Nothing said in these instructions and nothing in any form of verdict prepared for your

convenience is meant to suggest or convey in any way what verdict I think you should find.

What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

GOVERNMENT'S REQUESTED JURY INSTRUCTION #1

**Question is Not Evidence**

The questions asked by a lawyer for any party to this case are not evidence.  If a lawyer asks a question of a witness which contains an assertion of fact, you may not consider the assertion by the lawyer as any evidence of that fact.  Only the answers are evidence.

1A O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 12:08 (6th ed. pdated Feb. 2014).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #2

**Multiple Defendants – Multiple Counts**

A separate crime is charged against one or more of the defendants in each count of the indictment. You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant.

Your verdict as to one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to the other defendant or other counts.

Tenth Circuit Criminal Pattern Jury Instructions, 1.22 (2011)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #3

**"On or About" Defined**

You will note that the indictment charges that the crimes were committed on or about a certain date. The government must prove beyond a reasonable doubt that the defendants committed these crimes reasonably near that date.

Tenth Circuit Criminal Pattern Jury Instructions, 1.18 (2011)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #4

**Charts and Summaries**

Some charts or summaries have been admitted into evidence and have been shown to you during the trial for the purpose of ease of presentation that are contained in other documents that are also in evidence in the case or that have not been admitted into evidence because they are voluminous.  You may consider the charts and summaries as you would any other evidence admitted during the trial and give them such weight or importance, if any, as you feel they deserve.

Adapted from 1A O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 14:02 (6th ed. updated Feb. 2014); Federal Rule of Evidence 1006.

GOVERNMENT'S REQUESTED JURY INSTRUCTION #5

**False Exculpatory Statements**

You have heard evidence about a statement given by defendant Thaler to law enforcement on September 18, 2012.  Statements knowingly and voluntarily made by a defendant upon being informed that a crime had been committed or upon being accused of a criminal charge may be considered by the jury.

When a defendant voluntarily offers an explanation or voluntarily makes some statement tending to show his or her innocence and it is later shown that the defendant knew that the statement or explanation was false, the jury may consider this as showing a consciousness of guilt on the part of a defendant since it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his or her innocence.

Whether or not evidence as to a defendant's explanation or statement points to a consciousness of guilt on his or her part and the significance, if any, to be attached to any such evidence, are matters exclusively within the province of the jury since you are the sole judges of the facts of this case.

In your evaluation of evidence of an exculpatory statement shown to be false, you may consider that there may be reasons—fully consistent with innocence—that could cause a person to give a false statement showing that he or she did not commit a crime. Fear of law enforcement, reluctance to become involved, and simple mistake may cause a person who has committed no crime to give such a statement or explanation.

1A O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 14:06 (6th ed. Updated Feb. 2014).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #6

**"Knowingly" Defined**

The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.

Fifth Circuit Pattern Jury Instructions (Criminal Cases), 1.37 (2012)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #7

**Proof of Knowledge or Intent**

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or omitted by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

1A O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 17:07 (6th ed. pdated Feb. 2014).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #8

**Count 1 – The Nature of the Offense Charged**
(Conspiracy to Commit Bribery, Obstruction of a Grand
Jury Proceeding, and Obstruction of an Agency Proceeding)

Count 1 of the Indictment charges that from at least October 2011, through in or about September 2012, in the District of Utah and elsewhere, the defendants, Robert G. Lustyik, Jr., and Johannes W. Thaler, knowingly conspired and agreed together and with others known and unknown to the grand jury to commit an offense against the United States, that is:

(a) To, directly and indirectly, corruptly give, offer, and promise a thing of value to LUSTYIK, a public official, with intent to influence an official act, that is, offering to pay LUSTYIK money in exchange for official actions taken by LUSTYIK to impede and otherwise obstruct the Utah criminal investigation into TAYLOR, in violation of 18 U.S.C. §§ 201(b)(1) and 2;

(b) To corruptly influence, obstruct, and impede and endeavor to influence, obstruct, and impede the due administration of justice in a Federal Grand Jury in the District of Utah, by using, and aiding and abetting the use of, LUSTYIK's official position as an FBI agent to undertake a series of official actions intended to frustrate, delay, and influence the Utah grand jury investigation of TAYLOR, in violation of 18 U.S.C. §§ 1503(a) and 2; and

(c) To corruptly influence, obstruct, and impede and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had, namely a federal criminal investigation being jointly conducted by the United States Department of Defense, the United States Department of Homeland Security, and the Internal Revenue Service, by using, and aiding and

abetting the use of, LUSTYIK's official position as an FBI agent to undertake a series

of official actions intended to frustrate, delay, and influence the Utah investigation of

TAYLOR, in violation of 18 U.S.C. §§ 1505 and 2;

and in furtherance of the conspiracy and to effect the objects of the conspiracy LUSTYIK,

TAYLOR, THALER, and others committed and caused others to commit overt acts in the

District of Utah and elsewhere.

## PURPOSE OF THE CONSPIRACY

Count 1 of the Indictment further charges that the purpose of the conspiracy was for

LUSTYIK, aided and abetted by THALER and TAYLOR, to take official actions to obstruct the

Utah investigation into TAYLOR, in exchange for which TAYLOR offered LUSTYIK and

THALER a stream of things of value, including but not limited to a share in profits on

anticipated contracts worth millions of dollars.

## MANNER AND MEANS

Count 1 also charges that the manner and means by which the defendants would and did

carry out the conspiracy included, but were not limited to, the following:

TAYLOR corruptly offered and provided a stream of things of value to LUSTYIK and

THALER, including but not limited to a $200,000 cash payment; money purportedly for the

medical expenses of LUSTYIK's minor child; and a share in the proceeds of:

    (a)    an anticipated contract to provide security for a multi-million barrel oilfield in

           South Sudan;

    (b)    an anticipated power-generation contract in Iraq worth more than $50 million;

    (c)    an anticipated contract for security and surveillance equipment and services in the

           UAE worth more than $100 million; and

(d)   an anticipated contract to broker the sale of 4 million barrels of oil per month from Iraq to a Chinese refinery.

In exchange, LUSTYIK, while serving as an FBI agent, corruptly took, purported to take, and agreed to take a series of official actions intended to influence, impair, and impede the Utah investigation of TAYLOR, including but not limited to opening TAYLOR as an FBI confidential human source; seeking to interview potential witnesses and targets in the Utah investigation; and using his official authority and position to contact the federal law enforcement agents and federal prosecutors in Utah to dissuade them from charging TAYLOR.

THALER served as a conduit between TAYLOR and LUSTYIK for both information and things of value.

LUSTYIK, with assistance from TAYLOR and THALER, took steps to conceal the full extent of his business relationship with TAYLOR from LUSTYIK's employer, the FBI, as well as the federal law enforcement agents and federal prosecutors conducting the Utah investigation into the DoD Contract, including by:

(a)   making material misrepresentations and omissions to the Utah federal law enforcement agents and federal prosecutors regarding the length and nature of LUSTYIK's relationship with TAYLOR and the existence of a business relationship between them;

(b)   using a dead drop email account to communicate about the bribery and obstruction scheme. LUSTYIK, TAYLOR, and THALER used the names of two football teams – the Giants and the Patriots (or Pats) – as the password for the dead drop, in addition to using the names of those teams as shorthand to inform each other that the dead drop contained new information;

(c)  using LUSTYIK's personal email account to communicate about their schemes, and using LUSTYIK's official FBI email account to communicate with the federal law enforcement agents and federal prosecutors working on the Utah investigation; and

(d)  using coded language to refer to each other and their activities, including referring to TAYLOR as "Captain America" or "Capt.", and referring to LUSTYIK as "the big guy."

GOVERNMENT'S REQUESTED JURY INSTRUCTION #9

**Conspiracy – Statutes Defining the Offense**

Title 18, United States Code, Section 371, provides in pertinent part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be . . . [guilty of an offense against the United States.]

Title 18, United States Code, Section 201(b)(1), provides in pertinent part:

> Whoever directly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . or offers or promises any public official . . . to give anything of value to any other person or entity, with intent—
>     (A)  to influence any official act; or
>     (B)  to influence such public official . . . to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or
>     (C)  to induce such public official . . . to do or omit to do any act in violation of the lawful duty of such official or person; . . . shall be . . . [guilty of an offense against the United States.]
> . . .
> [T]he term "public official" means . . . an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, . . . in any official function, under or by authority of any such department, agency, or branch of Government . . .;
> . . .
> [T]he term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit

Title 18, United States Code, Section 1503(a), provides in pertinent part:

> Whoever . . . corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be . . . [guilty of an offense against the United States.]

Title 18, United States Code, Section 1505, provides in pertinent part:

> Whoever corruptly. . . influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, . . . shall be [guilty of an offense against the United States.]

In turn, Title 18, United States Code, Section 1515, provides in pertinent part:

> As used in [Title 18, United States Code, Section 1505], the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

18 U.S.C. §§ 371, 201(b)(1), 1503(a), 1505

GOVERNMENT'S REQUESTED JURY INSTRUCTION #10

**Conspiracy - Elements**

Defendants Lustyik and Thaler are charged in count one with a violation of 18 U.S.C. Section 371.

This law makes it a crime to conspire to commit an offense against the United States.

To find the defendants guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First:*  the defendants agreed with at least one other person to violate the law.

*Second:*  one of the conspirators engaged in at least one overt act furthering the conspiracy's objective.

*Third:*  the defendants knew the essential objective of the conspiracy.

*Fourth:*  the defendants knowingly and voluntarily participated.

*Fifth:*  there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

Tenth Circuit Criminal Pattern Jury Instructions, 2.19 (2011)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #11

**Conspiracy – Existence of an Agreement**

The Government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or unspoken, to work together to achieve the overall objective of the conspiracy.

The Government does not have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. The Government also does not have to prove that all the members of the conspiracy directly met, or discussed between themselves their unlawful objectives, or agreed to all the details, or agreed to what the means were by which the objectives would be accomplished.  What the Government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective.

You may consider both direct evidence and circumstantial evidence in deciding whether the government has proved beyond a reasonable doubt that an agreement or mutual understanding existed. You may find the existence of a conspiracy based on reasonable inferences drawn from the actions and statements of the alleged members of the conspiracy, from the circumstances surrounding the scheme, and from evidence of related facts and circumstances which prove that the activities of the participants in a criminal venture could not have been carried out except as the result of a preconceived agreement, scheme, or understanding.

 Adapted from Pattern Crim. Jury Instr. 3rd Cir. 6.18.371C (2009).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #12

**Conspiracy – Membership in the Agreement**

If you find that a criminal agreement or conspiracy existed, then in order to find the defendants guilty of conspiracy you must also find that the Government proved beyond a reasonable doubt that the defendants knowingly and intentionally joined that agreement or conspiracy during its existence. The Government must prove that the defendants knew the goals or objectives of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goals or objectives and to work together with the other alleged conspirators toward those goals or objectives.

The government need not prove that the defendants knew everything about the conspiracy or that the defendants knew everyone involved in it, or that any one of the defendants was a member from the beginning. The Government also does not have to prove that the defendants played a major or substantial role in the conspiracy.

You may consider both direct evidence and circumstantial evidence in deciding whether the defendants joined the conspiracy, knew of its criminal objectives, and intended to further the objectives. Evidence which shows a defendant only knew about the conspiracy, or only kept "bad company" by associating with members of the conspiracy, or was only present when it was discussed or when a crime was committed, is not sufficient to prove that defendant was a member of the conspiracy even if that defendant approved of what was happening or did not object to it. Likewise, evidence showing that a defendant may have done something that happened to help a conspiracy does not necessarily prove that that defendant joined the conspiracy. You may, however, consider this evidence, with all the other evidence, in deciding

whether the government proved beyond a reasonable doubt that the aforementioned defendants

joined the conspiracy.


Adapted from Pattern Crim. Jury Instr. 3rd Cir. 6.18.371D (2009).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #13

**Conspiracy – Overt Acts**

The second element of a conspiracy charge is that one of the conspirators engaged in at least one overt act furthering the conspiracy's objective.  A conspirator can be someone other than the defendants if you find that they were part of the same conspiracy with which defendants are charged.  An overt act is an act performed to effect the object of a conspiracy, although it remains separate and distinct from the conspiracy itself.  Though the overt act need not be of a criminal nature, it must be done in furtherance of the object of the conspiracy.

In order to find the defendants guilty of conspiracy, you must find beyond a reasonable doubt that the defendants or one of their co-conspirators committed an overt act in furthering the conspiracy's objective.  You must be unanimous that at least one overt act was committed, and you must be unanimous as to *which* overt act was committed.

The Indictment charges that in furtherance of the conspiracy, and in order to accomplish its objects, defendants LUSTYIK and THALER and others committed overt acts in the District of Utah and elsewhere.  The Indictment charges that the following overt acts were committed:

On October 15, 2011, two days after the District Court in Utah denied AISC's hardship petition seeking the return of the monies that had been seized on September 7, 2011, from its bank account, TAYLOR provided LUSTYIK the names and agency affiliations of two of the Utah-based federal law enforcement agents conducting the Utah investigation into the DoD Contract, along with the contact information for one of the two agents.

On October 25, 2011, in the midst of a discussion between LUSTYIK and THALER regarding a deal to provide security to an oil field they were pursuing with TAYLOR, LUSTYIK sent THALER an email in which he informed THALER that "taylor is looking for a way to take

care of me so I said u n I r working together on these and he said he will be sending money ur way," later explaining that TAYLOR "has 2 contracts they r about to sign.  I think he might want to give us 200 gs."

On October 28, 2011, LUSTYIK instructed a fellow FBI agent in San Diego to "forward everything u got [on TAYLOR] to me" in order to permit LUSTYIK to "get Taylor open" as an FBI confidential human source.

On November 24, 2011, LUSTYIK and THALER exchanged a series of text messages regarding the Utah investigation into TAYLOR and their mutual business pursuits.  LUSTYIK opened the exchange by telling THALER, "I think we r rich by christmas !!", and when THALER asked why, LUSTYIK responded, "[h]e is gonna be free!!!!!!!!"  LUSTYIK went on to tell THALER that TAYLOR's money was soon going to be released, to which THALER responded, "[n]ice!", and suggested that LUSTYIK inform TAYLOR of the news.

On November 27, 2011, TAYLOR emailed THALER to tell him that "[LUSTYIK] called me earlier this evening.  He say [sic] this thing I'm dealing with is over and I should have my funds returned before X-Mas."

On December 20, 2011, in the midst of a series of emails between TAYLOR and THALER about brokering the sale of oil from Iraq to a Chinese refinery, TAYLOR instructed THALER to "[m]ake sure you let the big guy know about this.  We want him retired in 6 months to work with us.  I'll make you guys more money than you can believe. provided they don't think I'm a bad guy and put me in jail,"  to which THALER responded, "[t]he big guy knows."

The next day, December 21, 2011, THALER forwarded TAYLOR's email to LUSTYIK, telling him "[c]heck this out."

In or about January 2012, LUSTYIK opened TAYLOR as an FBI confidential human source.

On January 10, 2012, after TAYLOR had emailed LUSTYIK regarding apparent efforts by TAYLOR's counsel to settle the civil forfeiture case in Utah, LUSTYIK assured TAYLOR that "I cannot believe you are even forced to ask me my opinion on this.  All I can do is pledge my promise that I will bust my ass to make sure any future business endeavor erases this from your memory . . . I will not stop in my attempt to sway this your way."

In or about February 2012, during a telephone conversation between LUSTYIK and one of the Utah federal law enforcement agents investigating the alleged DoD Contract fraud involving TAYLOR, LUSTYIK expressed disbelief that the agents would consider seeking to indict TAYLOR, and said that he, LUSTYIK, was trying to work TAYLOR as a confidential human source.

In subsequent conversations with the same Utah federal law enforcement agent regarding TAYLOR's culpability, also in or about February 2012, when the Utah agent asked whether LUSTYIK was trying to shut down the Utah investigation, LUSTYIK replied negatively, but then suggested that it might come to that.

On February 9, 2012, THALER sent LUSTYIK a text message to inform him that he had "[j]ust talked to [TAYLOR].  He told me to bring my bank wire transfer numbers to Lebanon," LUSTYIK responded: "YES.  He is giving me money 'for [LUSTYIK's minor child] surgery' [sic]."  LUSTYIK then continued:  "Hopefully 100gs."

On February 9, 2012, TAYLOR sent LUSTYIK an email with the subject heading "Dead Drop," in which he wrote, "[o]ur site is AISC04@aol.com and the password is Giants2012."

On February 15, 2012, LUSTYIK and TAYLOR emailed each other about the Utah investigation, with LUSTYIK providing TAYLOR an update on the steps he was taking, including that: "Our ausa tells their ausa it has to go away now."

On February 15, 2012, THALER emailed TAYLOR his bank wire transfer information.

On February 25, 2012, LUSTYIK and THALER exchanged a series of text messages regarding LUSTYIK's belief that TAYLOR would give THALER money.  LUSTYIK stated, "Taylor is gonna hand u cash in Lebanon," and a few minutes later added, "[l]ike 150 gs."  When THALER asked LUSTYIK how to bring back the cash from Lebanon, LUSTYIK responded, "[i]n ur pants.  Or wire it ?  They won't stop 2 white guys at customs wo a reason," and then added, "[o]r I meet u at customs at jfk n cred u in."

On March 1, 2012, LUSTYIK and another FBI agent participated in a video teleconference with two of the prosecutors in Utah overseeing the Utah investigation to discuss the FBI's use of TAYLOR as a confidential human source.

Later that same day, on March 1, 2012, LUSTYIK sent a text message to THALER, "I really sent a scare into those ausas today."

On March 5, 2012, during an email exchange between TAYLOR and THALER discussing THALER's upcoming business trip to Lebanon, THALER wrote to TAYLOR: "A while back, you mentioned something about helping out the big guy with his [minor child's] doctor bills.  I would love to surprise him with a little something upon my return.  He's been busting his ass trying to clear up your predicament and I think it's just a matter of time because they really have no case from what he's been telling me."

On March 6, LUSTYIK sent a text message to THALER, stating, "[d]on't forget to mention to MT [TAYLOR] how hard I'm working on getting his shit pushed aside and how tough I'm having it with [LUSTYIK's minor child's] recent surgeries," and later that day, LUSTYIK again asked THALER, "[l]et me know if MT [TAYLOR] has anything for [LUSTYIK's minor child]?"

On March 7, 2012, LUSTYIK wrote to TAYLOR to inform him that he, LUSTYIK, had heard from one of the case agents on the Utah investigation earlier that day, explaining: "Seems we sent them into a reevaluation of MT [TAYLOR] and his potential knowledge of incident based on our SVTCC [secure video telephone conference call].  We have now developed enough to get our HQ [headquarters] to intervene and that's what I will be selling Monday."

On March 7, 2012, LUSTYIK and THALER exchanged text messages regarding getting money from TAYLOR, with LUSTYIK opening the exchange by asking, "[s]till no talk of [LUSTYIK's minor child]?"  and THALER replying, "[j]ust did.  10 tomorrow 200 later."

On March 8, 2012, LUSTYIK sent a text message to THALER asking him, "[a]ny word on that 200 for [LUSTYIK's minor child] cause half is to Uncle Hannes."

On March 9, 2012, LUSTYIK and THALER again exchanged text messages regarding getting money from TAYLOR, with LUSTYIK asking THALER, "[h]ey what's my salary?" and immediately followed that text with another, "[a]ny [LUSTYIK's minor child] stuff frm MT [TAYLOR] ?"  THALER responded, "$300g for u. . . . Haven't gotten anything for [LUSTYIK's minor child] yet.  I think he's waiting to see if anything happens this week."

On March 9, 2012, LUSTYIK emailed TAYLOR that "[w]e got some huge info that wil [sic] make it impossible for utah [sic] to indict u now.  We will have it over next week I believe."

On March 9, 2012, when TAYLOR asked LUSTYIK what the "huge" information was that LUSTYIK said would make it impossible for the Utah prosecutors to indict him, LUSTYIK responded the next day, "Go Giants !!!!"

That same day, on March 9, 2012, LUSTYIK texted THALER, "[j]ust did another interview.  MT [TAYLOR] has no chance of indictment now.  I own Utah."

On March 15, 2012, THALER sent a text message to LUSTYIK, "Capt put 10 in the account today.  Won't be able to access it until Monday."

On March 15, 2012, LUSTYIK sent a text message to THALER, stating, "[a]t this point IF he is indicted there is NO WAY he gets convicted even though he Prob did it.  Too many former people like me testifying on his behalf."

On March 18, 2012, LUSTYIK and THALER exchanged text messages regarding whether LUSTYIK could hope to soon retire from his job as an FBI agent, whereupon LUSTYIK noted, "Keeping in mind that if I do then we might lose valuable contacts?"  A few minutes later, LUSTYIK added, "I can leave in June.  But I'm afraid to if capt gets indicted n I'm not an agent I'm no help.  Has he mentioned giving me-u a salary?"

On March 19, 2012, TAYLOR caused a $10,000 transfer to be made into a bank account owned and controlled by THALER.

On March 19, 2012, LUSTYIK sent text messages to THALER regarding interview reports he had done regarding TAYLOR, stating "[t]ell [TAYLOR] I want to show his lawyer my 302s," and a few minutes later, "I've got to send them to u somehow.  N his lawyer has to be shhhhhhhh."

On March 19, 2012, when TAYLOR emailed LUSTYIK about a positive development in the Utah investigation, LUSTYIK responded, "See Buddy.  I'm not BSing you.  When our ausa spoke w/[the Utah AUSA] he began to panic because the woman at main Justice [sic] read my interviews . . . EVEN if they did indict....they lose huge now."

On March 21, 2012, in responding to an email from TAYLOR regarding a power-generation contract TAYLOR was pursuing on their behalf in Iraq, THALER emailed TAYLOR and noted that he had calculated their expected profits based on the numbers TAYLOR had provided him:  "If our cost is $64mil, our net will be $58 mil per year."

On March 21, 2012, after receiving THALER's calculation of expected profits, TAYLOR copied LUSTYIK on the email string, and wrote "Not bad for a start up company."

On March 24, 2012, when LUSTYIK sent a text message to THALER stating, "[b]est news I've got is the ausa called again n basically said that mike is gonna be left alone.  He will speak to mike's lawyer this week," THALER responded, "[t]hat would be great.  As soon as that happens we get some $.  Capt will be very grateful."

Later that day, March 24, 2012, LUSTYIK continued that text thread with THALER by suggesting that THALER ask TAYLOR to give both of them a loan, stating, "[h]e knows we r keeping him outta jail."

On March 25, 2012, amidst emails regarding a potential power-generation contract in Iraq, LUSTYIK wrote to TAYLOR, "[w]e r all set to blast Utah on 2 sides. I am committed."

On March 28, 2012, LUSTYIK wrote to TAYLOR to inform him about an email he received from one of the Utah investigators, and about LUSTYIK's further efforts to end the

Utah investigation:  "As an investigator, this [the Utah law enforcement agent's email] shows me that he is in panic mode.  He can't re-interview the people we have spoken with, and there really isn't anyone left for him to speak with. . . .  What he is telling me is that he must have been chastised by [the Utah prosecutor] because now they have NO witness list. . . . Your lawyer should press the issue and ask them to 'reconsider' [sic] your offer to cooperate. . . . [Another FBI agent] and I are meeting w [a retired FBI agent] next week.  He is your only 'critic' but I've led him to where we need him to be. . . . Now he is on the 'nice list.' [sic]"

On April 3, 2012, LUSTYIK wrote an email to one of the agents handling the Utah investigation, asking the agent "Can't we just get [TAYLOR] to be a CW [cooperating witness] for you guys ??"

On April 4, 2012, TAYLOR wrote to LUSTYIK that the Utah prosecutor "needs to hear it from your USA [United States Attorney] or someone up high," and finished by advising LUSTYIK that TAYLOR was "writing a proposal for the 150 MW [megawatt] deal that we are going to sign in the next 3 to 4 days."

On April 7, 2012, LUSTYIK emailed TAYLOR and told him:  "[a]s far as Utah goes … I will not stop clearing you until I hear from [the prosecutor] myself that its done. I am committed to bringing my organization back to a place where the Truth mattered and we had Balls.  I present this to management as either u help or u r gutless.  No quit in me and I continue to fight for you."

On April 7, 2012, after TAYLOR expressed his gratitude to LUSTYIK for LUSTYIK'S efforts on the Utah investigation, LUSTYIK wrote, "We are at the higher HQ level now w an Assistant to the Director going to be briefed this coming week.  Can only go one step higher..."

On April 12, 2012, after THALER wrote to TAYLOR that LUSTYIK was "worried about the debt that he's carrying for all the surgeries [on his child]," TAYLOR assured THALER that "[w]e will get those bills squared away."

On April 17, 2012, LUSTYIK opined to TAYLOR about the progress of the Utah investigation: "The rate this is going. I will be indicted way before u ever are !!"

On April 20, 2012, LUSTYIK emailed TAYLOR and, after telling him about several calls that were purportedly being made on TAYLOR's behalf (presumably to the Utah federal prosecutors and agents), asked: "Can you think of anyone else that we can neutralize with an interview ? Someone who they might try to use against you that we could go speak with that would basically ruin their offensive ? Where are Harris n Young ?"

On April 20, 2012, TAYLOR replied to LUSTYIK's question: "Young is in Tampa, Florida and you can get to him," and provided LUSTYIK with Young's contact information, but that "Harris I heard is in Vietnam." TAYLOR further provided LUSTYIK with information on four additional witnesses in the Utah investigation.

LUSTYIK concluded the April 20, 2012, email exchange with TAYLOR by pledging his commitment to derail the Utah investigation: "I am going to interview Young and just blow the doors off this thing."

On April 21, 2012, in an email thread discussing LUSTYIK's efforts on TAYLOR's behalf, TAYLOR told LUSTYIK: "I can't begin to tell you how much I appreciate you! But I sure can show you when it's done and over with. Thank you!"

On May 7, 2012, LUSTYIK exchanged emails with THALER regarding concerns that their dead drop email account had been compromised, telling THALER, "I don't want it to be Utah or someone affiliated w them" accessing the dead drop, and expressing relief that, since it appeared that whoever was accessing the account was doing so using an iPhone, the source of the suspicious logins "[c]an't be the Bureau then."

Five days later, on May 12, 2012, THALER emailed TAYLOR to tell him that the "big guy says we have to change boxes.  I will print out what's in the current one and get it to him.  I will call you with new box tomorrow."

On May 14, 2012, THALER sent LUSTYIK a five-word email regarding the new drop box: "BME2012.  Same mail service. Horsemen80."

On May 15, 2012, LUSTYIK and TAYLOR discussed in an email the grand jury subpoena that had been served on Witness One, and LUSTYIK advised TAYLOR:  "A lot of fight left either way Mike.  [Witness One] is allowed to say whatever [Witness One] wants. They ask a question…[Witness One] starts every answer w. 'No way he did this.'"

On May 16, 2012, LUSTYIK received an email on his official FBI email account from his supervisor, informing him that "we cannot have any unauthorized communications [with TAYLOR], period."

Five days after the admonition from his supervisor, LUSTYIK and TAYLOR engaged in an email discussion about the Utah investigation.  After TAYLOR emailed LUSTYIK to inquire about whether there had been "[a]ny word from main justice," LUSTYIK responded to TAYLOR on May 21, 2012, and stated, "[h]opefully today."  LUSTYIK later stated in the same

email exchange, "[w]ill call u tomorrow.  [Attorney for Witness One] owes me a call back. Remind him please."

On May 24, 2012, after LUSTYIK provided TAYLOR with additional updates on his efforts on TAYLOR's behalf, TAYLOR informed LUSTYIK that the UAE was prepared to enter into contracts for security-related products and services that would yield "a total of $90 million per year."

On June 3, 2012, LUSTYIK and TAYLOR exchanged emails regarding the effect of LUSTYIK's efforts on the Utah investigation.  LUSTYIK first told TAYLOR:  "So we have got them running scared now.  Their investigators are panicked about our calls n meeting w [an FBI section] and main Justice." Further on in the discussion, LUSTYIK wrote, "[t]his will come down to the egos of the ausas. They won't want to lose.  So since they will have 15 special agents against them as witnesses they will fold."  TAYLOR responded that he'd "really like to end this and rake in some serious doe [sic] on these projects here which is starting to happen."

Later in the same email exchange, on June 3, 2012, TAYLOR also informed LUSTYIK that he had a meeting in the UAE with the "Min of Defense . . . They say they are interested in contracting with us for the Buckeye and perhaps wanting 3 systems.  That is 90 million a year and about 35 million for us."

On June 4, 2012, LUSTYIK described to THALER in a text message the efforts he was making on TAYLOR's behalf, telling THALER, "I'm on a freedom tour," and agreeing with THALER's assessment that he was "the new Harriet Tubman!"

On June 7 and 8, 2012, LUSTYIK and another FBI agent traveled to FBI headquarters in Washington, D.C., to participate in meetings at which TAYLOR's suitability as a confidential human source was assessed.

On June 11, 2012, TAYLOR sent an email to LUSTYIK and THALER in which he described the success of his trip to Abu Dhabi: "their Minister of Defense wants 6 systems. Each system sells for $30 million, each system give [sic] us $20 million profit. If I sold if [sic] for less they would not be excited about it."

On June 11, 2012, the same day that TAYLOR sent separate emails to LUSTYIK and THALER telling them that TAYLOR's lawyer had informed him he would be indicted, LUSTYIK had a telephone call with one of the Utah federal law enforcement agents, advising the agent that although the FBI would likely not stand in the way of an indictment of TAYLOR because "that Bureau is long gone," TAYLOR would nonetheless call current and former FBI agents, including LUSTYIK himself, as character witnesses.

On June 21 and 22, 2012, LUSTYIK sent a series of text messages to one of the federal law enforcement agents handling the Utah investigation, informing the agent that LUSTYIK was going to be "meeting w DOD next wed" about TAYLOR, and "[p]lease let [the DoD case agent] know" about the meeting, and that "[t]hey will be debriefing MT [TAYLOR]. Re our mutual joint op."

On June 22, 2012, LUSTYIK sent a text message to THALER, stating, "[w]anna fill u in on MT [TAYLOR]. I got it fixed. I'm so sneaky."

On June 26, 2012, LUSTYIK emailed TAYLOR that he, LUSTYIK, was "out schmoozing the DOD guys. They r gonna crush [the DoD case agent on the Utah investigation].

They r going to convince their boss to call [one of the AUSAs handling the Utah investigation]. I will call u right before lunch tomorrow.  I'm gonna keep these guys out all night if I have to."

On July 2, 2012, using his official FBI-issued blackberry device, LUSTYIK sent yet another text to one of the federal law enforcement agents handling the Utah investigation, stating:  "Looks like we r going to be doing another set of interviews.  Did u guys interview [Witness Two]?"

On July 12, 2012, when LUSTYIK texted THALER regarding his efforts on TAYLOR's behalf in the Utah investigation, THALER told LUSTYIK that "if [TAYLOR's] free. I'm sure you'll have a new occupation that pays better than your current position," to which LUSTYIK responded, "I hope so cause I'm so fcuked [sic] at work now its crazy."

On July 25, 2012, THALER forwarded to LUSTYIK an email exchange he had had with TAYLOR regarding various business opportunities TAYLOR was pursuing for the three of them, with this comment:  "This is what he sent me today.  I don't think he knows for sure when we'll start getting paid.  My best guess would be 2-3 weeks."

On July 31, 2012, TAYLOR emailed LUSTYIK to tell him that "[w]e are about a week or so away from signing 3 large projects worth more than $80 million."

That same day, July 31, 2012, LUSTYIK forwarded TAYLOR's email to THALER with a "?" appended to the top of the email, to which THALER responded that TAYLOR was "about to sign the Buckeye deal and the oil drilling deal," and LUSTYIK responded, "[w]ill we get any money from it ? And when?" After THALER responded "[h]ope so," LUSTYIK concluded the exchange by urging THALER to "ask him" for money:  "Call him.  He will tell you.  He knows we need money.  I said it in an email."

On August 5, 2012, LUSTYIK emailed TAYLOR to tell him that he, LUSTYIK, had heard from one of the federal law enforcement agents on the Utah investigation, who was "panicked" about the contents of TAYLOR's FBI file and the effect it could have on the Utah case, and informed TAYLOR that LUSTYIK was turning down a job in the private sector because taking the job would leave him "out of the loop so….lets hope you are released of this ridiculous burden soon."

On August 5, 2012, in that same email discussion, LUSTYIK switched topics to a discussion of a way that he and TAYLOR could "make some quick coin" by brokering gold sales to a friend of LUSTYIK's, and TAYLOR responded by telling LUSTYIK that "[q]uick coin is the easy part of this.  Right after Ramadan it all starts rolling for us.  40 drill sites, Oil well service which is starting now and the Buckeye.  You will have more coin than you know what to do with.  You were wise to turn down [the private sector job]."

The next day, on August 6, 2012, after LUSTYIK wrote to TAYLOR, "[l]et's just get Utah over with and get stinking rich," TAYLOR replied: "Getting stinking rick [sic], we are well on the way with that so I have the ball."

Two days later, on August 8, 2012, LUSTYIK sent text messages to THALER regarding their expected profits, writing "We will be rich by halloween," and "I mean like RICH."

On August 15, 2012, after TAYLOR learned that he would be indicted on August 22, 2012, he emailed LUSTYIK to alert him that it was going to happen "[u]nless someone tells [a supervisory AUSA in Utah] to stop," to which LUSTYIK responded, "I'm on it."

The next day, on August 16, 2012, LUSTYIK emailed TAYLOR to update him on his efforts to stop the indictment, telling TAYLOR that "[t]here is a serious disconnect somewhere . . . I've got to call [a supervisory AUSA in Utah] myself tomorrow."

On September 8, 2012, after TAYLOR returned to the United States from Lebanon, was stopped at the border, and certain of his electronic devices were seized pursuant to a border search, THALER sent a text message to LUSTYIK: "[TAYLOR] just called.  He's back home.  Customs grabbed his phone and laptop.  He wants you to call him on his sons number [number omitted]."

On September 8, 2012, LUSTYIK sent a series of text messages to THALER regarding the seizure of TAYLOR's electronics at the border, telling THALER:  "Great.  Now I go to jail too," and further explaining, "I'm so fcuked [sic].  I told him not to travel w electronics."

The next day, September 9, 2012, LUSTYIK texted THALER, ". . . MT [TAYLOR] mightve gotten me jammed up n sent to jail so he better come thru."

A few minutes later, on September 9, 2012, LUSTYIK instructed THALER, "[y]ou might have to save me and testify that only you r doing business w him."

On September 12, 2012, LUSTYIK and THALER exchanged text messages regarding asking TAYLOR for money.  LUSTYIK first wrote to THALER, ". . . did u ask MT [TAYLOR] about any money coming in?" and later, "[b]ut did u blatantly ask for money?  He wants to give us (me) money for [LUSTYIK's minor child]."   THALER replied, "I didn't ask for money directly.  I only asked about the deals.  I didn't know he was giving money for [LUSTYIK's minor child]."   LUSTYIK then informed THALER, "[a]ll coded.  I'm trying to get u some breathing room.  [LUSTYIK's minor child] has surgery [date omitted]."

On September 18, 2012, just nine days after LUSTYIK sent THALER that instruction, THALER told federal law enforcement agents, in a voluntary, recorded interview, that LUSTYIK was not involved in TAYLOR's and THALER's business.

On September 18, 2012, the day TAYLOR made his initial appearance in this case, LUSTYIK instructed THALER that, "I just got suspended and may be arrested today based on helping capt.  Let him know asap !!!"

GOVERNMENT'S REQUESTED JURY INSTRUCTION #14

**Conspiracy – Success Immaterial**

The Government is not required to prove that any of the members of the conspiracy were successful in achieving any or all of the objectives of the conspiracy. You may find the defendants guilty of conspiracy if you find that the Government proved beyond a reasonable doubt the elements I have explained, even if you find that the Government did not prove that any of the conspirators actually committed any other offense against the United States. Conspiracy is a criminal offense separate from the offenses that were the objectives of the conspiracy; conspiracy is complete without the commission of those offenses.

Adapted from Pattern Crim. Jury Instr. 3rd Cir. 6.18.371G (2009).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #15

**Conspiracy – Acts and Statements of Co-conspirators**

The acts or statements of any member of a conspiracy are treated as the acts or statements of all the members of the conspiracy, if these acts or statements were performed or spoken during the existence of the conspiracy and to further the objectives of the conspiracy.

Therefore, you may consider as evidence against the defendants any acts done or statements made by any members of the conspiracy, during the existence of and to further the objectives of the conspiracy. You may consider these acts and statements even if they were done and made in the defendants' absence and without the defendants' knowledge. As with all the evidence presented in this case, it is for you to decide whether you believe this evidence and how much weight to give it.

Adapted from Pattern Crim. Jury Instr. 3rd Cir. 6.18.371K (2009).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #16

**Conspiracy – Venue**

The events presented at trial happened in various places. There is no requirement that the entire conspiracy take place in the District of Utah, but in order for you to return a guilty verdict, the government must prove by a preponderance of the evidence that either the agreement or an overt act took place in this district, even if the defendants never set foot in the district.  As I mentioned before, an overt act is an act performed to effect the object of a conspiracy, although it remains separate and distinct from the conspiracy itself.  Though the overt act need not be of a criminal nature, it must be done in furtherance of the object of the conspiracy.

Unlike the other elements of the offense, this is a fact that the government has to prove only by a preponderance of the evidence. This means the government has to convince you only that it is more likely than not that part of the conspiracy took place in the District of Utah.  All other elements of the offense must be proved beyond a reasonable doubt. You are instructed that Salt Lake City, Utah, and St. George, Utah, are both located in the District of Utah.

Fifth Circuit Pattern Jury Instructions (Criminal Cases), 1.18A (2012)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #17

**Conspiracy – Multiple-Object Conspiracy**

The defendants are charged with agreeing to commit three different crimes – Bribery of a Government Official, Corruptly Obstruction the Administration of Justice, and Corruptly Obstructing an Agency Proceeding.  In order to find defendants guilty on the charge of conspiracy, you must find beyond a reasonable doubt that defendants agreed to commit at least one of these crimes, but you do not need to find that they agreed to commit all three.  You must, however, unanimously agree on which of these crimes they agreed to commit.

*See United States v. Vaziri*, 164 F.3d 556, 566 (10th Cir. 1999).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #18

**Count 1 – Conspiracy to Commit Bribery of a Public Official**

The first crime that defendants are charged with conspiring to commit is Bribery of a Public Official.  For purposes of Count 1, if you find beyond a reasonable doubt that defendants agreed to commit this crime, you need not find that defendants actually committed this crime. The elements of the crime of Bribery of a Public Official are:

*First:*  the defendants, together with co-conspirator Michael L. Taylor, gave, offered, or promised, directly or indirectly, anything of value to defendant Lustyik; and

*Second:*  at the time defendant Lustyik was a public official, and

*Third:*  the defendants, along with co-conspirator Michael L. Taylor, did this act, i.e. offer to pay defendant Lustyik money in exchange for official actions taken by defendant Lustyik, intentionally and with the unlawful purpose to influence an official act by defendant Lustyik.

The term "public official" includes an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch thereof, in any official function, under or by authority of any such department, agency, or branch.

The term "official act" means any decision or action on any question or matter which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust.

Adapted from Tenth Circuit Criminal Pattern Jury Instructions, 2.11 (2011)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #19

**Count 1 – Conspiracy to Corruptly Obstruct Administration of Justice**

The second crime that defendants are charged with conspiring to commit is Corruptly Obstructing the Administration of Justice.  This law makes it a crime for anyone to corruptly obstruct, impede, or endeavor to obstruct or impede the due administration of justice in connection with a pending judicial proceeding, in this case, a federal grand jury in the District of Utah.

The elements of Corruptly Obstructing the Administration of Justice are:

*First:*  there was a proceeding pending before a federal grand jury in the District of Utah;

*Second:*  the defendants knew of the pending grand jury investigation and obstructed, impeded, or endeavored to obstruct or impede the due administration of justice in that proceeding; and

*Third:*  the defendants' act was done "corruptly," that is, the defendants acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice.

It is not necessary to show that the defendants were successful in achieving the forbidden objective, only that the defendants corruptly tried to achieve it in a manner which they knew was likely to obstruct or impede the due administration of justice as the natural and probable effect of the defendants' actions.

Adapted from 10th Circuit Criminal Pattern Jury Instructions, 2.62 (2011)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #20

**Count 1 – Conspiracy to Corruptly Obstruct an Agency Proceeding**

The third crime that defendants are charged with conspiring to commit is Corruptly Obstructing an Agency Proceeding.  This law makes it a crime for anyone to corruptly influence, obstruct, impede, or intentionally endeavor to influence, obstruct, or impede an agency proceeding.

The elements of Corruptly Obstructing an Agency Proceeding are:

*First:*  there was an agency proceeding, in this case, a federal criminal investigation being jointly conducted by the United States Department of Defense, the United States Department of Homeland Security, and the Internal Revenue Service; and

*Second:*  the defendants were aware of that proceeding; and

*Third:*  the defendants corruptly influenced, obstructed, impeded, or intentionally endeavored to influence, obstruct, or impede that proceeding.

The term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

*United States v. Bhagat*, 436 F.3d 1140, 1147 (9th Cir. 2006); 18 U.S.C. §§ 1505, 1515(b)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #21

**Counts 2 through 9 – Honest Services Wire Fraud**

In Counts 2 through 9, defendants are charged with Honest Services Wire Fraud.  This law makes it a crime for anyone to deprive the public of its right to the honest and faithful services of its public officials, through a scheme to defraud involving bribery.

To find the defendants guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:  the defendants knowingly devised or participated in a scheme to defraud the public of its right to the honest services of defendant Lustyik through bribes;

*Second*:  the defendants did so with the specific intent to defraud;

*Third*:   the defendants used, or caused another person to use, interstate or foreign wire communications facilities for the purpose of carrying out the scheme; and

*Fourth*:  the scheme involved false or fraudulent pretenses, representations, or promises that were material.

The term "public official" includes an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch thereof, in any official function, under or by authority of any such department, agency, or branch.  The term "official act" means any decision or action on any question or matter which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust.

Adapted from Tenth Circuit Criminal Pattern Jury Instructions, 2.57 (2011)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #22

**Counts 2 through 9 – Honest Services Wire Fraud – First Element**

The first element that the government must prove is that the defendants knowingly devised or participated in a scheme to defraud the public of their right to a public official's honest services through bribes.  A "scheme" is any plan or course of action formed with the intent to accomplish some purpose.  Thus, to find the defendants guilty of this offense, you must find that the defendants devised or participated in a plan or course of action involving bribes given or offered to a public official.[1]

Public officials owe a fiduciary duty to the public.  To owe a fiduciary duty to the public means that the official has a duty of honesty and loyalty to act in the public's interest, not for his or her own enrichment.  When a public official devises or participates in a bribery scheme, that official violates the public's right to his or her honest services.  This is because the official outwardly purports to be exercising independent judgment in official work, but instead has received benefits for the outcome or deed.  The public is defrauded because the public is not receiving what it expects and is entitled to, namely, the public official's honest services.[2]  Additionally, the defendant himself need not be a fiduciary or public official:  a private citizen, for instance, does not owe a duty of honest services to the public, but can be found guilty of

---

[1]   *Skilling v. United States*, 561 U.S. 358 (2010).

[2]   *United States v. Kincaid-Chauncey*, 556 F.3d 923, 939 (9th Cir. 2010) (collecting cases).  *See also United States v. Panarella*, 277 F.3d 678, 696 (3d Cir. 2002); *United States v. deVegter*, 198 F.3d 1324, 1328 (11th Cir. 1999) (internal citations omitted).

honest services fraud if he devises or participates in a bribery scheme intended to deprive the public of its right to a public official's honest services.[3]

Bribery involves the exchange of a thing or things of value for official action by a public official, in other words, a *quid pro quo* (a Latin phrase meaning "this for that" or "these for those").  Bribery also includes offers and solicitations of things of value in exchange for official action.  That is, for the payor, bribery includes the offer or agreement to provide a thing of value to a public official in exchange for official action, whether or not the public official actually accepts the thing of value or agrees to perform the official action.  For the public official, bribery includes the public official's solicitation or agreement to accept a thing of value in exchange for official action, whether or not the payor actually provides the thing of value, and whether or not the public official ultimately performs the requested official action or intends to do so.

The public official and the payor need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods.  Rather, the intent to exchange things of value for official actions may be established by circumstantial evidence, based upon the defendants' words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.[4]

Bribery requires the intent to effect an exchange of money or other thing of value for official action, but each payment need not be correlated with a specific official act.  The requirement that there be payment of a thing of value in return for the performance of an official act is satisfied so long as the evidence shows a "course of conduct" of things of value flowing to

---

[3]   *United States v. Urciuoli*, 613 F.3d 11, 17-18 (1st Cir. 2010).  *See also United States v. Potter*, 463 F.3d 9, 16 (1st Cir. 2006); *United States v. Alexander*, 741 F.2d 962, 964 (7th Cir. 1984), *overruled on other grounds*.

[4]   *Evans v. United States*, 504 U.S. 255, 274 (1992) (Kennedy, J., concurring), *quoted in*, *inter alia*, *United States v. Abbey*, 560 F.3d 513, 518 (6th Cir. 2009); *Kincaid-Chauncey*, 556 F.3d at 937; *United States v. Ganim*, 510 F.3d 134, 143 (2d Cir. 2007).

a public official in exchange for a pattern of official actions favorable to the donor. In other words, the intended exchange in bribery can be "this for these" or "these for these," not just "this for that." Further, it is not necessary for the government to prove that the defendants intended that a set number of official acts be performed in return for the payments. Thus, all that must be shown is that payments were made with the intent of securing a specific *type* of official action in return. For example, payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the public official will take specific official actions on the giver's behalf.[5]

It is not a defense to claim that a public official would have lawfully performed the official action in question even without having accepted a thing of value.[6] In other words, it is not a defense that the offer or promise of anything of value was made to the public official in exchange for an official action that is actually lawful, desirable, or even beneficial to the public. The crime of "honest services" fraud is not concerned with the wisdom or results of the public official's decisions, but rather with the manner in which the public official makes his or her decisions.[7]

Also, it is not necessary for the government to prove that the scheme actually succeeded,[8] or that any official act was actually taken by the public official in the course of the scheme.[9]

---

[5] *United States v. Kemp*, 500 F.3d 257, 282 (3d Cir. 2007), *cited in Skilling*, 561 U.S. at 413; *United States v. Whitfield*, 590 F.3d 325, 352-53 (5th Cir. 2009), *cited in Skilling*, 561 U.S. at 413. *See also Ganim*, 510 F.3d at 145, 148-149; *United States v. Sawyer*, 85 F.3d 713, 730 (1st Cir. 1996); *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998).

[6] *United States v. Orenuga*, 430 F.3d 1158, 1166 (D.C. Cir. 2005) (citing *United States v. Brewster*, 408 U.S. 501, 526 (1972)).

[7] *See, e.g., United States v. Lovett*, 811 F.2d 979 (7th Cir. 1987).

[8] **Error! Main Document Only.***Pasquantino v. United States*, 544 U.S. 349, 371 (2005).

[9] *See, e.g.,* **Error! Main Document Only.***United States v. Potter*, 463 F.3d 9, 16 (1st Cir. 2006).

What the government must prove is that the defendants knowingly devised or participated in a scheme to defraud the public and the government of their right to a public official's honest services through bribes.

Also, because people rarely act for a single purpose, the giver need not have offered or provided the thing of value only in exchange for specific official actions, and the public official need not have solicited or accepted the thing of value only in exchange for the performance of official action.  If you find beyond a reasonable doubt that the giver offered or provided a thing of value in exchange for the performance of official action, then it makes no difference that the giver may also have had another lawful motive for providing a thing of value.  Likewise, if you find beyond a reasonable doubt that a public official solicited or received a thing of value in exchange for the performance of official action, then it makes no difference that the public official may also have had another lawful motive for soliciting or accepting the thing of value.[10]

 "Anything of value" includes things possessing intrinsic value, whether tangible or intangible, that the person giving or offering or the person soliciting or receiving considers to be worth something.[11]   This includes a sum of money, shares of stock, percentage of revenue, commissions, favorable treatment, or a job offer.  It also includes things of value given not to the public official but to a family member or third party for the benefit of the public official and at the official's knowing direction.

---

[10] *United States v. Woodward*, 149 F.3d 46, 70-71 (1st Cir. 1998).

[11] *United States v. Marmolejo*, 89 F.3d 1185, 1192 (5th Cir. 1996) (collection of cases).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #23

**Counts 2 through 9 – Honest Services Wire Fraud – Second Element**

"Intent to defraud" means to act knowingly and with the specific intent to deceive, for the purpose of depriving the public and government of their right to a public official's honest services.  The deceit may consist of the concealment of the things of value that the public official has solicited or received, or the public official's implicit false pretense to his governmental employer that he remains loyal to the employer's interest. [12]

Whether a person acted knowingly and with intent to defraud is a question of fact for you to determine, like any other fact question.  This question involves the defendants' state of mind.

Direct proof of knowledge and intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he or she committed an act with the intent to defraud.  Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward conduct, acts, words, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

---

[12]   *Sawyer*, 239 F.3d at 41.  *See also Skilling*, 561 U.S. at 401 (citing and quoting *United States v. Proctor & Gamble*, 47 F. Supp. 676, 678 (D. Mass. 1942)).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #24

**Counts 2 through 9 – Honest Services Wire Fraud – Third Element**

The phrase "transmits by means of wire communication in interstate commerce" means to send information across state lines by means of telephone or telegraph lines.  It includes email and telephone calls, as long as the communication or transmission of information is between states, including the District of Columbia.

The wire communication need not contain a fraudulent representation or purpose or request for money. It must, however, further or assist in the carrying out of the scheme to defraud.  It is not necessary for the defendants to be directly or personally involved in a communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which you find that the defendants agreed to have participated.[13]

Evidence that the defendants agreed to cause a communication by others is sufficient. This does not mean that the defendants must specifically have authorized others to do the communication. When one does an act with knowledge that the use of a wire communication will follow in the ordinary course of business or where such use of such a communication can reasonably be foreseen, even though not actually intended, then one causes an interstate wire communication to be used.[14] It is not necessary that the defendants know that a wire communication will be between states, including the District of Columbia.

---

[13] *United States v. Pasquantino,* 336 F.3d 321, 335 (4th Cir. 2003), *affirmed*, 544 U.S. 349 (2005).

[14] *Id.*

Moreover, the use of an interstate wire communications need not be an essential element of the scheme. Rather, it is sufficient if the communication was incident to an essential part of the scheme or a step in the plot.[15]

---

[15] *United States v. Pecora*, 693 F.2d 421 (5th Cir. 1982).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #25

**Counts 2 through 9 – Honest Services Wire Fraud – Fourth Element**

The government must prove that the scheme to defraud involved false or fraudulent pretenses, representations, or promises that were material.  A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity.  A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud. A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision or action by the public or the government office or agency that employed the public official.

Adapted from Tenth Circuit Criminal Pattern Jury Instructions, 2.57 (2011)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #26

**Counts 2 through 9 – Honest Services Wire Fraud – Charged Wires**

The Indictment charges defendants with eight counts of Honest Services Wire Fraud – these are Counts 2 through 9 in the Indictment.  The elements of each of these counts is the same for each of these, with one exception – each count refers to a specific wire communication, and to find the defendants guilty of that particular count, you must find, beyond a reasonable doubt, that that specific wire communication was made, or caused to be made, by the defendants.

The wire communications that are charged in the Indictment are as follows:

- *Count 2:*   March 1, 2012 video teleconference between defendant Lustyik and the federal prosecutors in Utah
- *Count 3:*   April 3, 2012 email from defendant Lustyik to Special Agent Keith Darnell in Utah
- *Count 4:*   June 7, 2012 text message from defendant Lustyik to Special Agent Shaun Helt in Utah, received by Agent Helt at 6:21 a.m.
- *Count 5:*   June 11, 2012 telephone call between defendant Lustyik and Agent Helt in Utah
- *Count 6:*   June 21, 2012 text message from defendant Lustyik to Agent Helt in Utah, received by Agent Helt at 12:51 p.m.
- *Count 7:*   June 21, 2012 text message from defendant Lustyik to Agent Helt in Utah, received by Agent Helt at 12:55 p.m.
- *Count 8:*   June 22, 2012 text message from defendant Lustyik to Agent Helt in Utah, received by Agent Helt at 4:55 a.m.
- *Count 9:*   July 2, 2012 text message from defendant Lustyik to Agent Helt in Utah, received by Agent Helt at 10:33 a.m.

GOVERNMENT'S REQUESTED JURY INSTRUCTION #27

**Count 3 – Wire Communication in Interstate Commerce: Internet**

I previously instructed you that the third element of the charge of honest services wire fraud is that the defendants used, or caused another person to use, interstate or foreign wire communications facilities for the purpose of carrying out the scheme.  I further instructed you that the phrase "transmits by means of wire communication in interstate commerce" means to send information across state lines by means of telephone or telegraph lines.

Count 3 of the Indictment charges defendants with sending, or causing defendant Lustyik to send, an April 3, 2012 email from defendant Lustyik to Special Agent Keith Darnell in Utah. Because of the interstate nature of the Internet, *if* you find beyond a reasonable doubt that the defendants used the Internet in sending the email charged in Count 3, then that communication traveled in interstate commerce.

*United States v. Elonis*, 730 F.3d 321, 335 (3d Cir. 2013).

GOVERNMENT'S REQUESTED JURY INSTRUCTION #28

**Count 10 –Corruptly Obstructing Administration of Justice**

In Count 1, the defendants were charged with conspiring to corruptly obstruct the administration of justice; in Count 10 they are charged with actually committing this crime, in addition to conspiring to commit it.  Earlier in these instructions, I read to you the language in the United States Code for this law.  This law makes it a crime for anyone to corruptly obstruct, impede, or endeavor to obstruct or impede the due administration of justice in connection with a pending judicial proceeding, in this case, a federal grand jury in the District of Utah.

To find the defendants guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First:*  there was a proceeding pending before a federal grand jury in the District of Utah;

*Second:*  the defendants knew of the pending grand jury investigation and obstructed, impeded, or endeavored to obstruct or impede the due administration of justice in that proceeding; and

*Third:*  the defendants' actions were done "corruptly," that is, that the defendants acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice.

It is not necessary to show that the defendants were successful in achieving the forbidden objective, only that the defendants corruptly tried to achieve it in a manner which they knew was likely to obstruct or impede the due administration of justice as the natural and probable effect of the defendants' actions.

Adapted from Tenth Circuit Criminal Pattern Jury Instructions, 2.62 (2011)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #29

**Count 11 – Conspiracy to Corruptly Obstruct an Agency Proceeding**

In Count 1, the defendants are charged with conspiring to Corruptly Obstruct an Agency Proceeding; in Count 11, they are charged with actually committing this crime, in addition to conspiring to commit it.  Earlier in these instructions, I read to you the language in the United States Code for this law.  This law makes it a crime for anyone to corruptly influence, obstruct, impede, or intentionally endeavor to influence, obstruct, or impede an agency proceeding.

To find the defendants guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First:*  there was an agency proceeding, in this case, a federal criminal investigation being jointly conducted by the United States Department of Defense, the United States Department of Homeland Security, and the Internal Revenue Service; and

*Second:*  the defendants were aware of that proceeding; and

*Third:*  the defendants corruptly influenced, obstructed, impeded, or intentionally endeavored to influence, obstruct, or impede that proceeding.

The term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

*United States v. Bhagat*, 436 F.3d 1140, 1147 (9th Cir. 2006); 18 U.S.C. §§ 1505, 1515(b)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #30

**Aiding and Abetting**

Each count of the indictment also charges a violation of 18 U.S.C. Section 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendants guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First:*  someone else committed the charged crime, and

*Second:*  the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about.  This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

The defendants need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting.  A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.  But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.


Adapted from Tenth Circuit Criminal Pattern Jury Instructions, 2.06 (2011)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #31

**Difference Between Conspiracy and Aiding and Abetting**

Sometimes jurors have difficulty understanding the legal difference between the criminal offenses of "conspiracy" and "aiding and abetting."

"Conspiracy" depends and is based on any agreement, unspoken or expressed, whether carried over into a conspiratorial act or not; whereas "aiding and abetting" depends on a showing of conscious participation in a criminal act, i.e., knowingly assisting in the performance of the criminal act charged.

It is the element of "agreement" that distinguishes conspiracy from aiding and abetting.

Tenth Circuit Criminal Pattern Jury Instructions, 2.19, Use Note (2011)

GOVERNMENT'S REQUESTED JURY INSTRUCTION #32

**Similar Acts**

You have heard evidence of other crimes, acts, or wrongs engaged in by the defendants. You may consider that evidence only as it bears on the defendants' knowledge, motive, intent, opportunity, plan, or absence of mistake or accident, and for no other purpose. Of course, the fact that the defendants may have previously committed an act similar to the one charged in this case does not mean that the defendants necessarily committed the act charged in this case.

Adapted from Tenth Circuit Criminal Pattern Jury Instructions, 1.30 (2011)

COURT'S STANDARD INSTRUCTION No. 11

**Reaching a Verdict**

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, for the mere purpose of returning a verdict.

Remember at all times, you are not partisans.  You are judges -- judges of the facts.  Your sole interest is to seek the truth from the evidence in the case

COURT'S STANDARD INSTRUCTION No. 12

**Duty to Deliberate**

The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance.  It is rarely productive or good for a juror, upon entering the jury room, to make an emphatic expression of his or her opinion on the case or to announce a determination to stand for a certain verdict.  When one does that at the outset, his or her sense of pride may be aroused, and he or she may hesitate to recede from an announced position if shown that it is wrong.  Remember that you are not partisans or advocates in this matter, but are judges

COURT'S STANDARD INSTRUCTION No. 13

**Selecting a Foreperson**

Upon retiring to the jury room, you will first select one of your number to act as your foreperson.  The foreperson will preside over your deliberations and will be your spokesperson here in court.

You will take the verdict form to the jury room, and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill it in, date and sign the form, and then return with your verdict to the courtroom.

COURT'S STANDARD INSTRUCTION No. 13

**Communications with the Court**

If it becomes necessary during your deliberations to communicate with the court, you may send a note by a court security officer, signed by your foreperson or by one or more jurors. No member of the jury should attempt to communicate with the court by any means other than a signed writing; and the court will never communicate with any member of the jury on any subject touching the merits of the case, otherwise than in writing or orally here in open court.

You will note from the oath the court security officer will take that he, as well as any other person, is also forbidden to communicate in any way with any juror about any subject touching the merits of the case.

Bear in mind also that you are not to reveal to any person -- not even to the court -- how the jury stands numerically or otherwise until you have reached a unanimous verdict.

GOVERNMENT'S REQUESTED JURY INSTRUCTION #33

**Verdict Form**

A form of verdict has been prepared for your convenience.  Please carefully review and complete this entire form as you reach your verdict.  The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty.  At the conclusion of your deliberations, the foreperson should date and sign the verdict.

Adapted from Tenth Circuit Criminal Pattern Jury Instructions, 1.23 (2011)