Michael J. Langford, Utah State Bar #9682
LAW OFFICE OF MICHAEL J. LANGFORD, P.C.
43 East, 400 South
Salt Lake City, Utah 84111
Telephone: (801) 328-4090
Fax: (801) 746-5613
Email: Michael@mjl-law.com

*Attorney for Robert G. Lustyik, Jr.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>           **PLAINTIFF,**<br>   vs.<br><br>**ROBERT G. LUSTYIK, JR. and JOHANNES W. THALER,**<br><br>           **DEFENDANTS.** | **OPPOSITION TO GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE**<br><br><br>Case No. 2:12-cr-645 TC<br><br>**Judge Tena Campbell** |

Defendant Robert G. Lustyik, Jr. (Lustyik) by and through his counsel Michael J. Langford, respectfully submits this opposition to the Government's Motion for Preliminary Order of Forfeiture.

### INTRODUCTION

The Government's Motion requests that this Court order the preliminary forfeiture in the form of a $70,0000.00 *in personam* judgment against Lustyik and Johannes Thaler (Thaler) jointly and severally. However, the Government overreaches, attempting to go well beyond what is supported by the facts and law as they relate to this forfeiture issue. There is no evidence to

1

support a preliminary forfeiture order of $70,000.00 against Lustyik.  The amount should be $2,000.00.

## STATEMENT OF FACTS

An evidentiary hearing is required for the Court to be fully informed on the factual background relevant to the Government's Motion for Preliminary Forfeiture Order because there are witnesses involved in this matter whose testimony is critical to a determination of whether or not Lustyik actually "obtained" the proceeds the Government claims he did.  Lustyik will present evidence of the following:

The Government claims that Lustyik "obtained" the proceeds subject to its motion of forfeiture in two separate transactions.

**$10,000.00 Payment -**

The first transaction involves a $10,000.00 wire transfer, from George Zayak to Thaler. The Government claims that Michael Taylor (Taylor) directed Zayak to make the transfer for the benefit of Thaler and Lustyik. They also claim that the transfer was part of the over-arching criminal scheme.  In Government Exhibit 4, as attached to their Motion, Taylor admits that Zayak designated the payment to Thaler as consulting fees, but didn't specifically know why. An evidentiary hearing will demonstrate that Thaler credited $8,000.00 of the $10,000.00 ,transferred, to pay for- and account for- incurred travel expenses. As a part of his consulting, Thaler took a business trip to Lebanon with Taylor, Zayak and Michael Feldman (Feldman). Conspicuously, Zayak and Feldman have not been indicted, and there isn't any evidence that they were involved in the alleged "criminal conspiracy" attributed to Lustyik and Thaler.  The evidence strongly suggests that the business dealings conducted in Lebanon are legitimate in purpose and were not illegal.   The Government acknowledges that Lustyik received only

2

$2,000.00 of the $10,000.00 at issue in the transaction. While the business conducted, and the underlying $8,000 travel expense, are legitimate, if the purpose of Thaler's trip to Lebanon was in furtherance of the alleged bribery conspiracy, the cost of that trip is only $8,000.00.

### $60,000 Payment-

The second payment the Government assess against Lustyik is a $60,000.00 payment to Blue Meadow Energy. John Galeno, a physician and personal acquaintance of Lustyick, provided the $60,000.00 as an investment. Galeno invested $60,000.00 in Blue Meadow, which was subsequently delivered to Feldman- not Talyor. Blue Meadow was Feldman's company, Taylor only assisted in the business; Taylor is not a Blue Meadow partner, or owner. Blue Meadow Energy, LLC, was created by Michael Feldman in an effort to address energy and development needs throughout several Central and Eastern European countries; Feldman's business and investment efforts are unquestionably legitimate. The relevant dates, as alleged by the Government's indictment, coincide with Mr. Feldman's efforts to secure investment in his company. As stated above Taylor had some involvement with Blue Meadow, but differences arose between Feldman and Taylor causing Taylor's departure from the company.

The evidence shows that sometime after Galeno's $60,000.00 investment into Blue Meadow, Lustyik received $26,000.00 from Feldman- acting as an agent of Blue Meadow. There is, however, no evidence that Taylor had any knowledge of, control over, or authority to direct the distribution of the Galeno's investment. The evidence will show that Feldman had complete control over the $26,000.00 transferred to Lustyik. In any event the Government admits that Lustyik retuned the entire $26,000.00 to Feldman shorty after Lustyik received it. Feldman had complete control over Galeno's investment, and there is no evidence to the contrary. Further, there is no evidence that the investment was used in furtherance of any conspiracy.

In fact, the evidence will show that Feldman spent Galeno's investment himself. The evidence shows that after the granted and returned $26,000.00, there were no further dealings between Blue Meadow or Feldman and Lustyik. Lustyik did not have any control over, interest in, or authority under Blue Meadow. Lustyik simply had no ability to direct Blue Meadow, or Feldman, to pay him at all.

## DISCUSSION

### I.     Criminal Forfeiture in the Form of Money Judgment.

The Tenth Circuit Court of Appeals has held the criminal forfeiture statute 21 U.S.C. § 853(a) permits a court to impose against an individual convicted of a drug offense, a money judgment on a defendant who possesses no assets at the time of sentencing. *U.S. v. Awad,* 598 F.3d 76, 78 (2nd Cir. 2010). However, the Government cites no such Tenth Circuit case that provides for the same type of forfeiture under 18 U.S.C. § 981(a), the statue under which the Government seeks forfeiture in this case. Other Circuits have held that § 981 (a) does allow for such an *in personam* forfeiture judgment. It has been held that 28 U.S.C. § 2461(c) permits the government to seek criminal forfeiture whenever civil forfeiture is available and the defendant is found guilty of an applicable offense. *United States v. Newman*, 659 F.3d 1235, 1239 (9th Cir. 2011).

Rule 32.2 of the F. R. Crim. P. and 21 U.S.C. § 853 govern the criminal forfeiture process. *United States v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007). "Criminal forfeiture provisions operate *in personam* against the assets of the defendant and serve as part of the penalty for the defendant's conviction." *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005) (citing 18 U.S.C. § 1963 & 21 U.S.C. § 853) "Criminal forfeiture reaches any *property involved in the offense*

4

*or any property traceable as proceeds to it.*" United States v. Lazarenko, 476 F.3d 642, 647 (9th Cir. 2007) (citing 18 U.S.C. § 982(a)(1)). *emphasis added.*

As to the amount of the money judgment, "[t]he statute mandates that a defendant forfeit a very specific amount – the proceeds of his criminal activity," or in other words, the amount "he received in connection with the commission of the crime." *United States v. Casey*, 444 F.3d 1071, 1076 (9th Cir. 2006). The purpose is to "eliminate the gains realized from criminal activity." *Id*. at 1074. The defendant is to forfeit the "proceeds" of the crime.

The term "proceeds" subject to forfeiture is defined in two ways in Title 18, U.C.A. § 981(a)(2). Section 981(a)(2) provides, in part:

> (A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.
>
> (B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

Generally, proceeds are limited to funds involved in the offenses of conviction, and should not be based on uncharged or acquitted conduct. *See, United States v. Nava*, 404 F.3d 1119, 1129 n. 5 (9th Cir. 2005); *United States v. Garcia-Guizar,* 160 F.3d 511, 524-25 (9th Cir. 1996). Generally, proceeds are not limited to the funds the defendant personally received, but include all of the funds he obtained indirectly through business entities he controlled or that served as his "alter ego." *United States v. Contorinis,*

5

692 F.3d 136, 147 (2d Cir. 2012); see also *United States v. Peters*, 257 F.R.D. 377, 381, 384 (W.D.N.Y. 2009).

A corporation is the defendant's alter ego if he (1) exercised such complete control that the corporation had no separate will of its own; and (2) this control was used to commit a wrong. *Peters*, 257 F.R.D. at 384-85 (citing cases).

Based on the above analysis, the Government maybe correct in its assertion that it has a legal basis for seeking an *in personam* forfeiture judgment against Lustyik and Thaler in this case. However, the *amount* of such a judgment that the Government seeks is far from correct and the applicable law and facts of this case. The evidence shows on $2,000.00 was "received in connection with the commission of the crime."

**II.     Determination of the Amount of Forfeiture.**

Lustyik and Thaler did not obtain the amount of $70,000.00 as proceeds from the "conspiracy to commit bribery and obstruction of justice in violation of 18 U.S.C.§§ 371, 201, and 1503; defendant Lustyik's honest services wire fraud, in violation of 18 U.S. C. §§ 1343 and 1346, and obstruction of the due administration of justice, in violation of 18 U.S.C. § 1503(a)", as alleged by the Government. In fact, the only "proceeds" that they obtained were $2,000.00 under the definition of "proceeds" applicable to this case which is found at 18 U.S.C. § 981(a)(2)(B). The definition of "proceeds" under 18 U.S.C. § 981(a)(2)(A) is not applicable as the Government contends, because the alleged source of the "proceeds" was a legal business, Blue Meadow Energy, established to carry out legal activities. The only illegal activity alleged is that Blue Meadow was going to help fund the alleged bribery scheme from otherwise legally obtained funds. *See, U.S. v. Mahaffy,* 693 F.3d 113, 138 (2nd Cir. 2012); *United States v. St. Pierre*, 809 F. Supp. 2d 538, 544 (E.D. La 2011). Feldman, who is not part of the alleged

criminal bribery conspiracy, controlled the funds of Blue Meadow. Lustyik returned all the funds he received from Blue Meadow and Feldman. The $60,000.00 payment was not "the gains realized from criminal activity." Not every amount invested in or obtained by Blue Meadow was to be used as bribes paid to Lustyik. Blue Meadow would have to be a successful legitimate company in order to fund the bribes in the amounts the government has alleged. As already stated, Blue Meadow was Feldman's company, not Taylor's. In fact the Government admits that Taylor did not like Feldman. Money invested into Blue Meadow it is not automatically traced to Lustyik as the government contends.

The Tenth Circuit has held, along with several district courts, that "specified unlawful activity" is not coterminous with "unlawful activities" in § 981(a)(2)(A); instead, § 981(a)(2)(A) encompasses inherently unlawful activities, such as robbery, that are not captured by the words "illegal goods" or "illegal services." *See, e.g.,* United States v. Nacchio, 573 F.3d 1062, 1088-89 (10th Cir.2009). As was held by the Court in *Mahaffy,* the Government's contentions that §981(a)(2)(A) applies to this case would render §981(a)(2)(B) essentially meaningless. Almost every predicate crime listed in § 981(a)(1)(C), the statute involved in this case, is also a "specified unlawful activity" listed in § 1956(c)(7). If every "specified unlawful activity" is subject to gross forfeiture under § 981(a)(2)(A), there would be only a handful of statutes involving counterfeiting, forgery, explosive materials, and fraudulent identification documents that would fall under the auspices of § 981(a)(2)(B). That interpretation would also lead to peculiar results. Some cases involving lawful goods or lawful services would be subject to forfeiture under §981(a)(2)(B) while other cases involving lawful goods or lawful services, by virtue of constituting a "specified unlawful activity," would be subject to gross forfeiture under § 981(a)(2)(A). *Mahaffy,* 693 F.3d at 137-138.

In this case as in *Mahaffy,* the defendants' conduct involved "unlawful activities" under subsection (A) for "lawful goods or lawful services" sold in an illegal manner under subsection (B). In *Mahaffy*, the alleged scheme involved the purchase and sale of securities. Trading securities, as a general matter, is not unlawful. Rather, any illegality occurred when the defendants bought and sold securities as part of a scheme involving illegal bribery. *Id.* at 138.

In this case the only "unlawful activities" which generated any "proceeds" are connected to the illegal bribery, allegedly funded through Blue Meadow, a legitimate company. Blue Meadows activities of developing energy generation sources and seeking investors were legal. Neither, Lustyik or Thaler had any control over Blue Meadow nor the distribution of funds therefrom. The activity for which they were paid, "business consulting", was a legal activity alleged carried on in an illegal manner because it was to fund bribes.

Because § 981(a)(2)(B) applies to this case the 'proceeds" to be forfeited are the net proceeds that Lustyik and Thaler received from the alleged "scheme", which is $2,000.00. The evidence will show that Thaler was required to spend $8,000.00 of the $10,000.00 from Zayak for travel expenses to Lebanon which are "direct costs incurred in providing the goods or services" for the alleged scheme. Thaler had to go Lebanon where Taylor was in order to obtain any "proceeds." None of the $60,000.00 was ever acquired by the Defendants here, and, in any event, it was not traceable to Taylor because it was paid to Feldman directly from Galeno.

Even if the § 981(a)(2)(A) gross proceeds forfeiture provisions were to apply in this case, there is no evidence that Taylor even knew about the Galeno money, let alone directed that it be given to Lustyik and Thaler as part of the bribery scheme. It is incredulous to claim that the $60,000.00 is "the proceeds of his criminal activity," an amount Lustyik "received in connection

with the commission of the crime." The only amount acquired by Lustyik was $26,000.00 which he later returned to Feldman. Lustyik did not obtain any "proceeds" from the Galeno money under a reasonable interpretation of either § 981(a)(2)(A) or (B).

The amount of the forfeiture judgment should be $2000.00, which is the net amount of proceeds obtained by the Defendants and/ or the only amount traceable to the alleged proceeds of the crime. The facts and law do not supported a greater amount.

DATED this 19th day of January, 2015.


*/s/ Michael J. Langford*
_____
 MICHAEL J. LANGFORD
Attorney for Robert Lustyik

CERTIFICATE OF SERVICE

I hereby certify that I e-filed the foregoing on the 19th day of January, 2015, through the CM/ECF filing system which sent notice to:

Maria N. Lerner
U.S. Department of Justice
Criminal Division, Public Integrity Section
1400 New York Ave, NW, 12th Floor
Washington, D.C. 20530

Ann Marie Blaylock Bacon
US. Department of Justice
Criminal Division, Asset Forfeiture and Money Laundering Section
1400 New York Ave, NW, 12th Floor
Washington, D.C. 20530

Karin Fojtik
U.S. Attorney's Office
District of Utah
185 South State Street, Suite 300
Salt Lake City, UT 84111


                                          Jayme Mackay            .